**Michael GILBERT, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 2–581A152.**

Court of Appeals of Indiana,
Fourth District.

Oct. 23, 1981.

Merle B. Rose, Cronin & Rose, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CHIPMAN, Presiding Judge.

Michael Gilbert is appealing his conviction by a Marion County jury for possession of heroin. Ind.Code 35–48–4–6 (1977). He was convicted of a Class D felony and sentenced to two years imprisonment. Gilbert contends the evidence was insufficient to convict him, the court prevented him from cross-examining his accuser, the chain of custody of physical evidence was not preserved and the court refused to consider mitigating circumstances in sentencing.

We affirm the conviction.

### I. Issues

Gilbert presents the following issues for review:

1) Was the evidence sufficient to convict him of violating Ind.Code 35–48–4–6 (1977)? "A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses a narcotic drug classified in schedule I or II commits possession of a narcotic drug, a class D felony. However, the offense is a class C felony if the amount of the drug involved has an aggregate weight of ten (10) grams or more."

2) Did the trial court deny Gilbert his constitutional right to confront a witness when it sustained the State's objection to a question asked during cross-examination?

3) Did the court err when it allowed evidence although the two officers who handled the evidence could not remember which one of them had deposited it in the vault?

4) Did the court abuse its discretion in not reducing Gilbert's sentence in light of mitigating factors presented to the court?

### II. Sufficiency of Evidence

In determining the question of sufficiency we do not weigh the evidence nor resolve questions of credibility but look only to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable jury could infer the defendant was guilty beyond a reasonable doubt. *Neice v. State*, (1981) Ind., 421 N.E.2d 1109, 1111.

The evidence in a light most favorable to the State is as follows:

About 6:00 p. m. on August 14, 1979, Michael Gilbert and three other men were sitting in a parked car on the near north side of Indianapolis. Police officers Robert McMillan and Donald Christ were in an unmarked police car nearby watching the front of a suspected gambling establishment when they noticed the men in the car.

"We observed the four subjects in the vehicle," McMillan testified at trial. "The ones in the front seat were reaching underneath the seat for something. We at that time thought that it might be—might possibly be gambling paraphenalia (sic), which we later learned it was not."

The officers decided to investigate and as they reached the vehicle, McMillan saw Gilbert throw a syringe out the window. McMillan and Christ told the men to remain in the car with their hands in view. Christ then radioed for assistance from narcotics investigators.

When officers Alan Simmons and James Wurz arrived, McMillan gave them the syringe; the four suspects were arrested and the car searched. A second syringe was

found under the dashboard and a cooker used to prepare heroin for injection was on the floor of the back seat.

Officers Wurz and Simmons took the syringes and cooker to the police department, sealed them in plastic bags and placed them in a vault. Forensic Chemist Dirk Shaw removed the evidence for analysis and later returned it to the vault where it remained until trial. The chemical analysis determined each of the items contained heroin; a schedule I controlled substance.

Gilbert contends there was "confusion" in the evidence, by which he apparently means the testimony was conflicting concerning whether Gilbert or someone else threw the syringe of heroin. Officer McMillan testified he was about four feet from Gilbert when he saw him throw the syringe. Since it is not our function to weigh the credibility of a witness, Officer McMillan's account was clearly sufficient to support a charge of possession. *Patterson v. State*, (1970) 255 Ind. 22, 262 N.E.2d 520; *Johnson v. State*, (1978) Ind.App., 376 N.E.2d 542.

██ Gilbert next contends the State failed to prove one of the elements of the charge: That the defendant did not have a prescription or order from a professional practitioner to have possession of the drugs. Gilbert offers no authority for such a position and his contention has no merit. The statute states an exception to and not an element of a crime. When an offense is created by a statute which provides for exceptions, it is not necessary for the prosecution to prove the exception. *Day v. State*, (1968) 251 Ind. 399, 241 N.E.2d 357; *Heldman v. State*, (1975) 163 Ind.App. 395, 324 N.E.2d 281.

██ We hold the evidence is sufficient for a jury to find Gilbert in possession of a controlled substance.

### III. Confrontation of Witnesses

 Gilbert next argues the trial court unduly limited his cross-examination, thereby denying him the Sixth Amendment right to confront his accuser. The scope and extent of cross-examination is largely with-

in the trial court's discretion. *Smith v. State*, (1979) Ind., 388 N.E.2d 484, 486; *Pulliam v. State*, (1976) 264 Ind. 381, 345 N.E.2d 229. Only where there is a total denial of access during cross-examination to an area bearing upon the credibility of a crucial state witness is a Sixth Amendment issue raised. Any lesser curtailment is reviewable only for an abuse of discretion. *Smith v. State, supra; Brooks v. State*, (1973) 259 Ind. 678, 291 N.E.2d 559.

██ In Gilbert's case, the court sustained an objection to a question to Officer McMillan, the State's key witness, concerning whether the syringe was in the car before Gilbert arrived.

"Q. Did you observe the order in which those four subjects got into that car or did you observe them at the same time that all four were in the car?

"A. They were seated in the vehicle when I first observed them, sir. I didn't see them get in.

"Q. So all of them were already there when you first observed them.

"A. Yes, sir.

"Q. So you don't know the order in which they got in the car do you?

"A. No, sir.

"Q. You don't know whether he got in last or first or what? You just saw them all there at the same time, correct?

"A. I only observed them in the vehicle for approximately two to three minutes. I don't know when they got in.

"Q. So that it's possible, is it not, Officer, that one of them might have gotten in first with the syringe or the syringe could have already been in there when another one would have gotten in? Is that possible?

"MR. TINDER: Excuse me, Judge. I'm going to interpose an objection. This witness, under the law is not to speculate. Anything is possible, and I don't think that's a proper question."

Because this line of questioning was not relevant to the credibility of the witness and sought information about which the witness had no knowledge, it was not a constitutional violation to sustain the objection. We note the cross-examination of McMillan was extensive and the State had no other objections. We do not find a violation of Gilbert's rights nor do we find any abuse of discretion by the trial court. The question was improper and the objection was properly sustained.

## IV. Chain of Custody

Gilbert next argues the court should not have allowed the syringes, the cooker and the heroin into evidence because the State failed to adequately establish the chain of custody. Specifically, the broken link in the chain is that neither Wurz nor Simmons could remember which of them deposited the evidence in the vault. Both officers, however, testified they were present when the evidence was deposited.

Simmons testified:

"[A]fter we left the scene, we went back to the narcotics branch and began marking evidence, identifying it, placing it in the heat-sealed bags which was then sealed in the narcotics branch. It was then taken to the police department property room where the property room attached this label and then it was put in the narcotics drop box, which is located in the property room."

Officer Wurz was asked on cross-examination if he or Simmons put the evidence in the narcotics drop box. He replied:

"A. I'd say I put it in.

"Q. You would say—

"A. —yes, sir—

"Q. —you're saying that as a positive assertion?

"A. Well, we have had approximately— oh, maybe 200 arests with drugs confiscated within this year. It would be hard for me to say because we are partners. We work as a team, and one time you do this, one time you do that. You never do the same thing. You act as a team.

You do it together. Now, who actually physically put it there, both of us was there when it went down. I don't know if I put it down or he put it down. I cannot positively say, but it was one of us two.

"Q. But you couldn't positively say that he did it nor could he positively say that you did?

"A. That is very true.

"Q. And then right now you're not sure that you did?

"A. His memory may be better than mine. I don't know what he said. I know I cannot say positively which one of us did it. One of us did it. One of us two did do it.

"Q. What—well, what I'm saying is you're not positive that you did—

"A. —right—

"Q. —but you can't be sure and positive that he did?

"A. Yes, sir, I can.

"Q. Not unless you saw it—

"A. —that's what—I was there when it went down."

The question, then, is not whether the evidence was deposited by one of the officers present, but which one physically placed the items in the box.

The purpose of establishing a chain of custody concerning seized evidence is to show a complete chain of possession from the original receiver to the final custodian and thus lay a proper foundation connecting the evidence with the accused. *Williams v. State*, (1979) Ind., 387 N.E.2d 1317. While the State is required to prove a chain of custody, it is not required to exclude every remote possibility of tampering. *Williams, supra; Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323; *Kolb v. State*, (1972) 258 Ind. 469, 282 N.E.2d 541. Where the State has introduced evidence which strongly suggests the whereabouts of an exhibit at all times, such evidence will be considered as sufficient for chain of custody purposes. *Mendez, supra.*

 The record before us shows the evidence was sealed and placed in a vault by either Wurz or Simmons, where it remained until removed for analysis. Until the analysis was completed, the evidence was locked in a safe, and after analysis, the evidence was replaced in the vault where it remained until trial. Although Officers Wurz and Simmons, who were partners at the time of Gilbert's arrest, could not remember which of them dropped the sealed bags into the vault's drop box, they both remembered being present when the evidence was deposited. Their testimony strongly suggests the whereabouts of the exhibits and is sufficient to insure their identity and integrity. The trial court did not err in admitting the exhibits into evidence.

### V. Sentence

 Gilbert next urges that the trial court erred in refusing to consider mitigating circumstances offered to justify a reduction of the crime to a class A misdemeanor.

If a person has committed a class D felony, the trial court may in its discretion enter judgment of conviction of a class A misdemeanor and sentence accordingly. Ind.Code 35–50–2–7(b). Only if the court exercises that option must it enter in the record, in detail, the reason for its action.

In this case, the trial court did not exercise that option. Instead the court sentenced Gilbert to the fixed term of two years. Ind.Code 35–50–2–7(a). Gilbert argues the court abused its discretion in sentencing because it "totally refused to consider any mitigation as set forward in the pre-sentence memorandum of the defendant."

First of all we note there is nothing in the record to indicate the trial court refused to consider any mitigating factors offered. The memorandum by the defendant appears in the record as does the pre-sentence report prepared by the court's probation officer. While the defendant is well liked by members of the community and is employed, he also has a previous felony conviction for armed robbery and admits past use of illegal drugs. Moreover, the drug involved in this conviction, heroin, is a particularly harmful one. The trial court gave Gilbert the minimum sentence for a class D felony, and it did not abuse its discretion in deciding not to treat this conviction as a class A misdemeanor.

We find no error by the trial court and accordingly the judgment is affirmed.

MILLER and YOUNG, JJ., concur.