**SIEBERT OXIDERMO, INC.,**
**Defendant-Appellant,**

v.

**Hershell David SHIELDS,**
**Plaintiff-Appellee.**

**No. 3–580A137.**

Court of Appeals of Indiana,
Third District.

Jan. 18, 1982.

John R. Berger, Angola, David B. Keller, Paul D. Mathias, Parker, Hoover, Keller & Waterman, Fort Wayne, for defendant-appellant.

Grant Van Horne, Van Horne & Van Horne, Auburn, for plaintiff-appellee.

## OPINION ON REHEARING

GARRARD, Judge.

The appellee, Shields, brought suit against Siebert Oxidermo, Inc. (the manufacturer) for personal injuries which allegedly resulted from Shield's exposure to the fumes given off from a paint manufactured by Siebert Oxidermo, Inc.

Summons was duly served. When the manufacturer failed to appear by the return date Shields moved for and secured a default. Upon Shields' request the court proceeded to hear evidence on damages and entered final judgment.

A few days later counsel employed by the manufacturer's insurance carrier discovered that a default judgment had been entered and promptly filed a TR 60(B)(1) motion to set the judgment aside. The trial court denied relief. It adhered to that position through the manufacturer's subsequent motion to reconsider and additional motions to set aside the judgment.

On appeal we originally affirmed by a memorandum decision. The basis for that ruling was, essentially, that the party contacted by the manufacturer to handle the matter was clearly the agent of the manufacturer.[1] Since no excuse, explanation or reason was given as to why the agent failed to forward the complaint and summons to the insurance carrier, the court could properly have concluded that no right to relief under TR 60(B) had been established.

In its petition for rehearing the manufacturer alleges, *inter alia*, that we failed to give a statement in writing deciding two substantial issues presented by it on appeal.

It first asserts that the trial court erred in failing to reconsider an apparent conflict of interest arising from the fact that the attorney who originally represent-

---

1. The agent had not been involved in issuance of the policy in question. Even under the manufacturer's theory of the case, the agent had no separate duty to process the claim.

ed it in filing the motion to set aside the default judgment was employed by its insurance carrier under the defense clause contained in the policy. The total argument is that because the carrier would be relieved of liability (because it had not been timely notified of the suit) if the judgment were not set aside, we should believe that the carrier and the attorney somehow failed to present the manufacturer's case for relief from the judgment.

We consider the argument impertinent, if not scandalous. Without considering the respected reputation of the attorney involved, we point out that on a daily basis defense attorneys employed by insurance carriers on behalf of policyholders are called upon to deal with matters in litigation where the interests of the policyholder and the carrier do not fully coincide. Under such circumstances the attorney's duty is, of course, to the insured whom he has been employed to represent. In response the defense bar has exhibited no inability to fully comply with both the letter and spirit of Canon 5 of the Code of Professional Responsibility. If it were otherwise we suspect the desirability of requiring carriers to supply defense counsel would have long since disappeared as a term of the policy.

In the instant case we note that when the error leading to the default judgment was uncovered the appellant could have secured private counsel. It was apparently quite content with the attorney employed by the carrier.[2] Moreover, after the attorney withdrew, the manufacturer filed its motion to reconsider and its additional motions for relief which were considered by the court on the merits. We thus agree with the manufacturer's own assertion in its brief that its subsequent motion(s) corrected any deficiency which may have existed in the original.

Appellant also attacks the hearing on damages which resulted in judgment for $760,000, the amount prayed for in the complaint.

It first argues that it was entitled to notice of the hearing on damages even though, at the time, it had not appeared in the action. We disagree. Trial Rule 55(B) in pertinent part states:

"If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, *the court may conduct such hearing* or order such references *as it deems necessary and proper* and shall accord a right of trial by jury to the parties when and as required." (Emphasis added)

Where the default is occasioned by a party's failure to appear, no notice to that party of an application for default is necessary. TR 55(B); *Protective Ins. Co. v. Steuber* (1977), Ind.App., 370 N.E.2d 406.

Under the language of the rule, where the damages prayed for in the complaint are certain and liquidated, no hearing may be necessary if the pleadings and exhibits establish the amount to be recovered. *See Stewart v. Hicks* (1979), Ind.App., 395 N.E.2d 308. Normal practice, however, usually includes, in the case of a defaulting defendant, placing plaintiff or its witness on the stand or furnishing the court an affidavit whereby the amount of the debt owing is made to appear. Such an *ex parte* hearing satisfies the requirement of TR 55(B) quoted above.

The reason for conducting such a "hearing" is to meet the requirement, long recognized in our law, that by defaulting a party does not concede the amount demanded. Thus, the court's determination of the amount of damages is a judicial act. *Pope v. United States* (1944), 323 U.S. 1, 65 S.Ct. 16, 89 L.Ed. 3.

From this it has uniformly followed that where the court merely awards

---

**2.** This attorney was instructed by the carrier to withdraw after the court denied relief on the TR 60 motion.

the default and reserves until a later date the matter of damages, that judgment is interlocutory. *Stewart v. Hicks, supra.* Thus, if the defaulted party appears before final judgment, he is entitled to be heard on the damages issues and may even be entitled to have a jury determine the amount of damages. *Kirk v. Harris* (1977), 173 Ind. App. 445, 364 N.E.2d 145. But in the case of the party defaulted for want of appearance, he is entitled to no further or additional notice of the proceedings to satisfy either the requirements of the rules or those of due process. The notice to which he is entitled is that provided by the summons and complaint. If the court, therefore, proceeds to a hearing on damages and enters an appropriate judgment thereon, the result is a final judgment. The defaulted party may not then complain upon the ground that he was given no notice of the hearing on damages. *See Carson v. Perkins* (1940), 217 Ind. 543, 553, 29 N.E.2d 772, 776.

We reaffirm that the court committed no error by failing to give the manufacturer notice of the hearing on damages. Our consideration of this issue has, however, led us to a reconsideration of the manufacturer's contention that the damages awarded were excessive.

■ Because the default itself does not admit the amount of damages, we believe this claim should be treated as other claims that the damages awarded in a final judgment were excessive. The standard of review is therefore the usual one that the amount of damages appear outrageous or the product of passion, prejudice or improper evidence. *Rossow v. Jones* (1980), Ind. App., 404 N.E.2d 12.

■ After a careful examination of the transcript of the evidence taken at the damage hearing we are convinced that the award entered was the result of prejudice, although not according to our usual connotation of that word. Prejudice denotes forejudgment, bias, or preconceived opinion. Black's Law Dictionary (4th Ed.).

Here the plaintiff was the only witness at the damage hearing. He testified that he was 31 years old at the time of the occurrence, but no evidence was introduced as to his work life expectancy or life expectancy. Hé testified that his weekly gross wages were $340.48 but also that his take home pay was at least $350 per week due to overtime. He could not state his earnings for the year prior to his injury. He testified that his hospital expenses at the hospital in Cleveland had been $10,800 plus, and in response to a leading question agreed that his total hospital expenses were over $20,000. No hospital or medical bills were introduced in evidence and no other testimony was offered as to medical expenses. Shields testified as to his prior efforts to return to work, but there was no direct evidence about his ability to work in the future. He detailed some of the restrictions upon his activities. When asked if the restrictions were permanent his only response was, "I hope not, but I'm afraid it is." At the conclusion of the hearing the trial court entered judgment for $760,000 which was the amount demanded in the complaint.

It appears clear to us that the trial court did not require Shields to prove the *amount* of his damages, as it was required by law to do. Instead the court required Shields to establish that he had suffered damages. It then, apparently based upon the preconception that the amount of damages was controlled by the default, entered judgment for the amount of the prayer. This was error.

We therefore grant rehearing in part, reaffirm our affirmance of the trial court's refusal to set aside the default, but reverse the judgment for damages and remand to the trial court for such further proceedings as may be necessary consistent with our views expressed herein.

Affirmed in part, reversed in part. Costs taxed to appellant.

HOFFMAN, P. J., and STATON, J., concur.