SIEBERT OXIDERMO, INC., Appellant,

v.

Hershell David SHIELDS, Appellee.

No. 1282S471.

Supreme Court of Indiana.

March 16, 1983.

John R. Berger, Angola, David B. Keller, Paul D. Mathias, Parker, Hoover, Keller & Waterman, Fort Wayne, for appellant.

Grant Van Horne, Van Horne & Turner, Auburn, for appellee.

## PETITION FOR REHEARING

GIVAN, Chief Justice.

Appellant Siebert Oxidermo (hereinafter "Oxidermo") petitions for rehearing in this case. On December 7, 1982, this Court handed down an opinion in this case dismissing the appeal initiated earlier by Oxidermo.

Oxidermo had originally appealed the case, in which the trial court granted a default judgment against Oxidermo, to the Court of Appeals. That Court issued a memorandum decision which affirmed the trial court's entry of default and grant of judgment thereon against Oxidermo. Then on rehearing the Court of Appeals reaffirmed the trial court's refusal to set aside the entry of default but reversed the trial court on the damages issue and remanded the case for rehearing or retrial on the issue of damages alone. *See, Siebert Oxidermo, Inc. v. Shields,* (1982) Ind.App., 430 N.E.2d 401.

Following the Court of Appeals' opinion on rehearing, both parties petitioned for transfer to this Court. We granted appellee Hershell David Shields (hereinafter "Shields") Petition to Transfer but denied that of Oxidermo. We issued an opinion, No. 1282 S 471, *handed down* December 7, 1982, holding Oxidermo had altogether forfeited its right to appeal for failure to comply with Ind.R.App.P. 2(A) requiring a party to file a praecipe with the trial court within thirty [30] days of the trial court's ruling on the Motion to Correct Error. We reached such result on the finding the trial court's ruling on the first of three Motions to Correct Error filed by Oxidermo was made February 14, 1980, and Oxidermo's praecipe was not filed until May 14, 1980, well beyond the thirty [30] day limit of Appellate Rule 2(A).

Oxidermo in its Petition for Rehearing pointed out we made an error in reading the record in this case. A correct reading of the record shows Oxidermo filed its praecipe with the trial court on February 21, 1980, obviously well within the time limit of Appellate Rule 2(A).

Therefore, our holding that the appeal was dismissed for failure to comply with Appellate Rule 2(A) was erroneous. Oxidermo did not on this or any other basis forfeit its right to appeal in this case. We accordingly withdraw our previously issued opinion in this case and grant the Petition for Rehearing of appellant Oxidermo. For reasons we shall show, we believe the remand of the case to the trial court for rehearing and retrial on damages was an erroneous disposition. We, therefore, grant Shields' Petition to Transfer which addresses this issue. We deny appellant Oxidermo's Petition to Transfer. It addresses the decision of the Court of Appeals insofar as the trial court's refusal to set aside the entry of default and grant of judgment thereon are concerned, which we believe to be correct.

### FACTS

Litigation in this case began on April 25, 1979, with the filing of a complaint in De-Kalb Superior Court by Shields against Oxidermo. Plaintiff sought damages in the amount of $760,000.00. Shields alleged he suffered permanent physical disabilities as a result of a heart attack he alleged was caused by inhaling paint fumes from the paint manufactured by Oxidermo.

Service was effected on Oxidermo on April 30, 1979, by certified mail. Accordingly, May 23, 1979, was the last date on which Oxidermo could file its answers. *See,* Ind.R.Tr.P. 6(C), (E). When no such responsive pleading was filed, Shields moved for a default judgment. The trial court entered a default and granted the default judgment against Oxidermo on May 24, 1979.

An attorney for Oxidermo entered an appearance shortly thereafter. On June 28, 1979, Oxidermo filed a "Motion to Set Aside Default and Default Judgment." In that motion, which Oxidermo specified as filed in accordance with Indiana Rules of Trial Procedure 55(C) and 60(B), Oxidermo alleged its failure to appear in the instant case was due to "excusable neglect." The essence of this claim was that Oxidermo forwarded the "suit papers" to its insurance agent, who then failed to get them to the proper insurance carrier on time. On September 6, 1979, a hearing was held on Oxidermo's motion. On October 9, 1979, the trial court denied the motion and entered Findings of Fact and Conclusions of Law with respect to that ruling.

The record in this case from this point on, insofar as procedural events are concerned, is to say the least tortured and confusing. These events are best understood if set forth as follows:

November 15, 1979—Second "Motion to Set Aside Default and Default Judgment," filed by Oxidermo.

December 4, 1979—First "Motion to Correct Errors," responding to denial of first motion to set aside, filed by Oxidermo.

January 23, 1980—Second motion to set aside (filed November 15, 1979) denied.

February 1, 1980—Second "Motion to Correct Errors," responding to denial of second motion to set aside, filed by Oxidermo.

February 13, 1980—Third "Motion to Set Aside Default and Default Judgment," filed by Oxidermo.

February 14, 1980—First and Second motions to correct error (filed December 4, 1979, and February 1, 1980) denied.

February 21, 1980—Praecipe for record filed in trial court by Oxidermo

March 28, 1980—Third motion to set Aside (filed February 13, 1980) denied.

May 13, 1980—Third "Motion to Correct Error," responding to denial of third motion to set aside, filed by Oxidermo. Denied this date.

May 14, 1980—Record filed with Clerk of Supreme Court and Court of Appeals.

One of Shields' arguments is that appellate jurisdiction in this case was never properly established and therefore the Court of Appeals erred in deciding the appeal at all. We rejected Shields' arguments in this regard in our original opinion and *sua sponte* (and erroneously) found appellate jurisdiction in this case was never established on another basis. Our grant of Shields' petition necessitates we again address the argument raised by Shields in this regard. The argument is premised on some recent decisions of the Court of Appeals in which that Court has reached some divergent holdings as to the proper procedure to be followed for challenging an entry of default and grant of judgment thereon.

Shields' argument focuses on Oxidermo's first Motion to Set Aside Default and Default Judgment, filed June 28, 1979, and denied October 9, 1979. It is Shields' contention this motion, allegedly brought on the authority of Ind.R.Tr.P. 60(B), must be treated as a Rule 59 Motion to Correct Error. Shields argues since it must be so treated, Oxidermo's time for perfecting an appeal from its denial began to run on the date it was denied, October 9. Therefore, Shields argues, Oxidermo had thirty [30] days from October 9 in which to file its praecipe for the record and ninety [90] days from October 9 in which to file the record with the Court of Appeals. *See,* Ind.R. App.P. 2(A) and 3(B). Obviously Oxidermo did not meet these requirements. The praecipe was not filed until February 21, 1980, one hundred thirty-five [135] days after October 9, and the record was not filed until May 14, 1980, two hundred seventeen [217] days after October 9, 1979. Thus, Shields concludes the Court of Appeals never had appellate jurisdiction in this case due to Oxidermo's failure to comply with Appellate Rules 2(A) and 3(B) requiring the praecipe and the record to be filed within thirty [30] days and ninety [90] days, respectively, of the ruling on the Motion to Correct Error. As stated, Shields' argument is dependent upon construing the Motion to Set Aside Default and Default Judgment, denied October 9, 1979, as a Rule 59 Motion to Correct Error.

In support of his argument the June 28 motion is to be treated as a motion to correct error, Shields cites *In Re Marriage of Robbins,* (1976) 171 Ind.App. 509, 358 N.E.2d 153. In that case the Third District of the Court of Appeals pointed out Rules 59 and 60 have some of the same basic inherent purposes, one of which is to call to the attention of the trial court errors in equity or in law. The Court read Ind.R. Tr.P. 59(A)(9), as encompassing all the equitable purposes in Ind.R.Tr.P. 60(B) during the sixty [60] day period after the entry of a final judgment. The Court concluded: "Therefore, a TR. 60 purpose stated in a motion, regardless of its denomination, should be treated as a TR. 59 motion if it is filed within the sixty day period after judgment." *Id.* at 513, 358 N.E.2d at 155.

Subsequently, in *Sowers v. Sowers,* (1981) Ind.App., 428 N.E.2d 245, the Third District cited *In Re Marriage of Robbins, supra,* and reaffirmed its holding.

However, in *Pre-Finished Moulding v. Ins. Guidance Corp.,* (1982) Ind.App., 438 N.E.2d 16, the Third District seemingly relaxed the rule established in *In Re Marriage of Robbins, supra,* and reaffirmed in *Sowers, supra.* In *Pre-Finished Moulding, supra,* the plaintiff-appellant suffered a dismissal for failure to prosecute, such order being entered on August 12, 1980. The plaintiff-appellant filed a Rule 60(B) motion to reinstate on September 12, which was denied on October 3. Then on December 2 he filed a Rule 59 motion alleging error in the denial of the motion to reinstate. The trial court, apparently following the rule in the *Robbins* case, held the motion to reinstate was in reality the motion to correct error and the December 2 motion was therefore not timely filed, as it was filed well after the entry of the final judgment in the case, which was the August 12 order of dismissal. The Court of Appeals stated:

"[U]ntil such time as our Supreme Court establishes by rule or decision that no motion to correct errors will be permitted to be addressed to the ruling on a TR 60 motion, we believe the interests of justice

and fair play dictate that a party should not forfeit consideration of his appeal because his attorney understandably believed the filing of such a motion to correct errors was a necessary prerequisite to his ability to perfect an appeal. We therefore hold that although the plaintiff could have appealed directly from the court's decision denying reinstatement of the claim, it did not forfeit the right to appeal by filing a timely motion to correct errors following that ruling and then awaiting the ruling upon the motion to correct errors before filing the praecipe for an appeal. We emphasize that in so holding we do not intend to subvert the principle . . . that TR 60 is not intended as a substitute for a prompt appeal. Plaintiff here filed its TR 60(B) motion within sixty [60] days of the order of dismissal and then filed its motion to correct errors in order to appeal the denial of that motion." *Pre-Finished Moulding, supra,* 438 N.E.2d at 20.

The Second District of the Court of Appeals has taken a less liberal view than that taken by the Third District in *Pre-Finished Moulding, supra.* In *Mathis v. Morehouse,* (1982) Ind.App., 433 N.E.2d 814, it held the filing of a Rule 60(B) motion within sixty [60] days of the grant of a default judgment must be treated as a Rule 59 Motion to Correct Error, citing the *Robbins* case. Therefore a later motion denominated as a Motion to Correct Error, allegedly appealing the denial of an earlier motion to set the default aside, was of no effect because it was untimely. Accordingly, the merits of the appellant's appeal were not considered by the Court of Appeals because there was no appellate jurisdiction in the case. The Second District was apparently not influenced by any consideration that moved the Third District in *Pre-Finished Moulding, supra,* to relax the rule of the *Robbins* case and consider the merits of the appeal. Judge Sullivan dissented, observing Rules 59 and 60 "constitute in many respects a morass and mixture of overlap, insufficiency, inconsistency, and incomprehensibility." *Mathis, supra,* 433 N.E.2d at 817.

Still another approach to the problem was reflected in the case of *Dawson v. St. Vincent Hosp. and Health Care Center,* (1981) Ind.App., 426 N.E.2d 1328, decided by the Fourth District of the Court of Appeals. There the Court held whether a motion filed within sixty [60] days of the entry of a default denominated as a Rule 60(B) motion was to be construed as a Rule 59 or 60 motion was to be determined by looking at the motion to see if it was a "plea for equity." *Id.,* 426 N.E.2d 1333. If such a motion sought to invoke the discretionary equitable powers of the court, the Fourth District held, it is not to be treated as a Rule 59 motion. But if the motion functioned as a motion to correct error, by serving the purposes listed in *P–M Gas Company, Inc. v. Smith,* (1978) 268 Ind. 297, 375 N.E.2d 592, then it is to be so construed. Accordingly, the time limits under Ind.R. App.P. 2(A) and 3(B) for filing a praecipe and record begin to run on the day it is denied or overruled. Thus, a subsequent motion denominated as a "Motion to Correct Error" is of no effect unless it too is filed within sixty [60] days of the entry of the default.

It may be noted at this point that all these decisions of the Court of Appeals represent a departure from the rule established in an earlier decision of that Court, *Yerkes v. Washington Manufacturing Company,* (1975) 163 Ind.App. 692, 326 N.E.2d 629. In that case the Court held the proper way to appeal from the grant of a default judgment was to file a Rule 60(B) motion first, and then file a Rule 59 Motion to Correct Error if the prior motion was denied. As Dean Harvey succinctly observed, the *Robbins* case and others following it have "hopelessly obscured the already murky requirements for post judgment relief . . . . [T]hese cases create potential problems for the trial counsel who files what he *thinks* is a Trial Rule 60 motion within the sixty-day time limit controlling Trial Rule 59 motions." (Emphasis in original.) 4 Harvey & Townsend, Indiana Practice, 1982 Pocket Supp., p. 76.

Under Rule 55(C), titled "Setting aside default," we find: "A judgment by default

which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Rule 60(B)."

Rule 60(B) states in relevant part:

"*Mistake—Excusable neglect—Newly discovered evidence—Fraud, etc.* On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect; (2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct error under Rule 59; . . . .

&ast; &ast; &ast; &ast; &ast; &ast;

"The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order, or proceeding was entered or taken for reasons (1), (2), (3), or (4)."

Looking at the part of Rule 60(B) set forth above, we are led to disagree with the holding in *In Re Marriage of Robbins, supra,* that a motion brought under Rule 60(B) to set aside a default would be regarded as a Rule 59 Motion to Correct Error. There is clear language in the Rule specifying the motion must be brought within one year after the entry of default or grant of judgment thereon, if brought for any of the first four reasons listed. But there is no reason for a party to believe a further distinction is drawn between Rule 60(B) motions filed from one to sixty days after the final order or judgment is entered and those brought from sixty-one days to one year thereafter. We construe Rule 60(B) to provide that all such motions brought within one year after the entry of default or grant of default judgment will be treated the same. We hold that in no event should such a motion be treated as a Rule 59 motion.

■ We overrule *Mathis, supra; Sowers, supra; Dawson, supra;* and *In Re Marriage*

of *Robbins, supra.* We also overrule that portion of *Pre-Finished Moulding, supra,* that holds an appeal may be taken directly from the ruling on a Rule 60(B) motion. Any other cases following the overruled cases cited above are also hereby overruled. We hold the proper procedure in the Indiana Rules of Trial Procedure for setting aside an entry of default or grant of default judgment thereon is to first file a Rule 60(B) motion to have the default or default judgment set aside. Upon ruling on that motion by the trial court the aggrieved party may then file a Rule 59 Motion to Correct Error alleging error in the trial court's ruling on the previously filed Rule 60(B) motion. Appeal may then be taken from the court's ruling on the Motion to Correct Error.

We point out the holding we reach today does nothing to modify the rule that a Rule 60(B) motion may not be used as a substitute for a direct appeal based upon a timely Rule 59 Motion to Correct Error. *See, Snider v. Gaddis,* (1981) Ind.App., 413 N.E.2d 322, and cases there cited. That rule still applies to judgments after a trial on the merits. But where a judgment has been granted after an entry of default, Rule 55(C) and 60(B), when read together, clearly allow a Rule 60(B) motion to be filed to begin the attempt to set aside the default judgment at any time within one year after that judgment has been granted, including during the first sixty [60] days thereafter.

Thus, we conclude there is no lack of appellate jurisdiction in this case due to Oxidermo's failure to file a praecipe and the record of proceedings within thirty [30] days and ninety [90] days of the denial of the first Rule 60(B) motion.

■ Shields argues the Court of Appeals erred in not addressing a question raised by the parties arising on the record. He contends the Court of Appeals failed to address his arguments that Oxidermo's repetitive filing of Rule 60(B) motions in this case and the filing of separate Rule 59 Motions to Correct Error in response to the denial of each was improper. Therefore, he argues, the only issues to be considered upon appeal

were those raised in the first Rule 60(B) motion and the Rule 59 motion associated with it. He concludes the Court of Appeals erred in remanding the case to the trial court for rehearing or retrial on damages. His reasoning is since there was no allegation of error by Oxidermo as to damages in the first Rule 60(B) motion and the Rule 59 motion related to it, the Court of Appeals could not address any damages issue at all in its opinion on rehearing. In the opinion on rehearing the Court of Appeals held:

"[T]he award entered was the result of prejudice. . . .

\* \* \* \* \* \*

"It appears clear to us that the trial court did not require Shields to prove the *amount* of his damages, as it was required by law to do. Instead the court required Shields to establish that he had suffered damages. It then, apparently based upon the preconception that the amount of damages was controlled by the default, entered judgment for the amount of the prayer. This was error." (Emphasis in original). *Siebert Oxidermo v. Shields, supra,* 430 N.E.2d at 404.

Looking at the procedural record in this case, it seems Oxidermo's strategy was to keep filing Rule 60(B) motions, each time reasserting the "excusable neglect" argument plus adding new grounds as well with each motion.

Shields cites the case of *Carvey v. Indiana National Bank,* (1978) 176 Ind.App. 152, 374 N.E.2d 1173, in support of his argument. In that case the Court of Appeals said: "A party may not file repeated TR 60 motions until he either offers a meritorious ground for relief or exhausts himself and the trial court in an effort to do so. *Id.* at 159, 374 N.E.2d 1177.

Oxidermo points to other language in the *Carvey* case indicating error alleged in a second Rule 60(B) motion may be considered in an appeal if the grounds for that additional error were unknown and unknowable to the movant at the time he made the first Rule 60(B) motion. Oxidermo asserts that is the case with the second and third Rule 60(B) motions it made in this case.

We see nothing in Oxidermo's second and third Motions to Set Aside Default Judgment that would permit an application of the exception set forth in *Carvey, supra.* The additional grounds for relief alleged by Oxidermo in the second and third motions were either discoverable at the time the first Rule 60(B) motion was filed or related to an alleged substantive defense available to Oxidermo, that there was no proof Shields' injuries were caused by use of Oxidermo's defective product. Substantive defenses as to causation are no longer an issue between parties after there has been an entry of default against the defendant. *See, e.g., Stewart v. Hicks,* (1979) Ind.App., 395 N.E.2d 308. Thus, the question of a lack of causation between plaintiff Shields' injuries and defendant Oxidermo's conduct would not have been a proper subject for consideration even in Oxidermo's first Rule 60(B) motion.

The issue of excessiveness of damages was not raised until the second Rule 60(B) motion was filed. We see no reason why it could not have been raised in the first Rule 60(B) motion. Rule 60(B)(2) provides the motion to set aside a default judgment may be based on "any ground for a motion to correct error . . . ." Rule 59(A)(3) states one basis for a motion to correct error is "[e]xcessive or inadequate damages . . . .". Thus Oxidermo could have alleged the damages awarded were excessive in the June 28 Rule 60(B) motion. We conclude the Court of Appeals erred in addressing the issue of damages at all in its opinion in this case when the only errors saved for appeal were those raised in the first Rule 60(B) motion and the accompanying Rule 59 motion.

We must also observe that to sanction the repetitive filing of Rule 60(B) motions by a party suffering a default judgment is to encourage defaulted defendants to drag their feet and be dilatory in discovering grounds for setting aside a default judgment. Where the grounds for the Rule 60(B) motion are covered in subparagraphs (1) through (4) of Rule 60(B), the party has

up to one year from the date of the entry of default or grant of default judgment to make such motion. Ind.R.Tr.P. 60. We do not wish to encourage defendants to hastily file a Rule 60(B) motion as soon as they discover one ground for relief under the Rule and then take their time about discovering and raising other Rule 60(B) grounds and bombarding the court with more such motions.

We hold there was no lack of appellate jurisdiction in this case. However, we also hold the issue of excessiveness of damages was not appealable by Oxidermo due to its failure to have raised the issue in the June 28, 1979, Motion to Set Aside Default Judgment.

This brings us to consideration of the trial court's refusal to grant the first Rule 60(B) motion of Oxidermo. As we have already noted only those arguments raised in that motion were available for consideration by the trial court via the Rule 59 motion filed in response to the denial of the Rule 60(B) motion.

We find the disposition of this issue by the Court of Appeals in its unpublished memorandum decision is a sufficient and correct treatment of the question of whether or not the trial court erred in refusing to set aside the default entry and grant of judgment thereon on grounds of "excusable neglect." Accordingly, we adopt the language of the Court of Appeals in that opinion, including its statement of facts, as our own.

"Shields brought suit alleging he suffered a heart attack as a result of inhaling the paint fumes during a test which was conducted at International Harvester, Shields' place of employment, in 1977. Summons and complaint were properly served upon Siebert Oxidermo's president, Donald Hurst, on April 30, 1979. In March 1979, Siebert Oxidermo had changed insurance agents from the Petricca Company to R.L. Jones & Associates. R.L. Jones had not issued the American States insurance policy applicable to Shields' injuries as the incident occurred prior to their having taken over the Siebert Oxidermo account. How-

ever, on May 1st, at Hurst's request, the suit papers were sent to William Elders, an account executive at the R.L. Jones agency. The evidence is conflicting as to whether Elders was to contact American States on Siebert Oxidermo's behalf.

"At the hearing to set aside the default judgment Hurst testified he asked his secretary to forward the legal documents to Elders, whom he wished to handle the matter. Hurst did not communicate directly with Elders regarding Shields' claim with the exception of one occasion when he asked Elders to follow through on the request which had been sent, and Elders said he would do so. Margaret Weaver, Hurst's secretary, testified she mailed the papers to Elders. When Elders called saying he was not the agent on their policy, Mrs. Weaver stated she advised him they wanted him to handle the matter. At Elder's request, on May 10th Mrs. Weaver forwarded the policies to him, along with an agent of record letter recognizing Elders as Siebert Oxidermo's agent under the policy. An affidavit submitted by Elders was admitted at the hearing in which he stated he had not told Hurst or Mrs. Weaver that he would handle the matter, but rather advised Weaver to send the suit papers to their former agent. He thought he was being sent the policies merely in order to determine the extent of coverage. Elders did not contact American States until May 25th. American States asked Elders to send him the summons and complaint, which he did on May 31st. Default judgment had been entered on May 24, 1979, one day after the return date on the summons.

"[Oxidermo's first Rule 60(B) motion was filed on June 28, 1979.] The trial court denied Siebert Oxidermo's request, and refused to reconsider its decision. In its conclusions of law, the court found Siebert Oxidermo was bound by the acts of its agent, R.L. Jones & Associates, and that the record is devoid of any evidence of probative value as to what occurred between May 1st and June 1st at the R.L. Jones agency. As such, the court concluded Siebert Oxidermo failed to sustain its burden of prov-

ing excusable neglect, surprise, or mistake pursuant to TR 60(B)(1).

■ "We initially note that our standard of review in the area of default judgments is a limited one. The decision whether or not to set aside a default judgment is committed to the sound discretion of the trial court. Thus, our review is limited to determining whether there has been an abuse of discretion. *Henderson v. American Optical Co.* (1981), Ind.App., 418 N.E.2d 549.

■ "Siebert Oxidermo urges the court abused its discretion in denying its motion to set aside under TR 60(B)(1) for excusable neglect, mistake or suprise. The trial court's discretion is necessarily broad in this area as any determination of excusable neglect must turn upon the unique factual background of each case. No fixed rules or standards have been established as the circumstances of no two cases are alike. *Grecco v. Campbell* (1979), Ind.App., 386 N.E.2d 960.

"The trial court's refusal to set the default aside was premised upon a finding that R.L. Jones and its account executive Elders could give no reason as to why the suit papers remained in their office for a month without any action having been taken. While the testimony was conflicting on this point, and the court could have based a finding of excusable neglect or mistake upon the apparent misunderstanding between Siebert Oxidermo officials and Elder as to the latter's role in handling the matter, it did not choose to do so. More significantly, under the evidence it was not compelled to do so.

"It is not our function to reweigh the evidence in arriving at our own conclusion. The evidence was such that the trial court could properly refuse to set aside the default. In *Henline, Inc. v. Martin* (1976), 169 Ind.App. 260, 348 N.E.2d 416, the court affirmed the trial court's refusal to set a default judgment aside where the defendant's insurance adjuster had failed because of the press of business to act promptly upon receipt of legal documents. In so holding, the court stated:

" 'Considering the role of defendants' insurance company as the entity in charge of defendants' defense, it would not be unreasonable for the trial court to analogize the status of the company's claims adjuster with that of an attorney acting on defendants' behalf so as to apply the "general rule . . . that the negligence of the attorney is the negligence of the client . . . ." *Moe v. Koe* (2d Dist. 1975), Ind.App. [165 Ind.App. 98]. 330 N.E.2d 761, 765.'

348 N.E.2d at 420–21. Further, as noted by the concurring opinion in *Continental Assurance Co. v. Sickels* (1969), 145 Ind.App. 671, 252 N.E.2d 439, and quoted by the court in *Henline:*

" '[T]his case should not be construed to always relieve an insurance corporation of the acts of its authorized employees and agents in mislaying or mishandling suit papers. Insurance corporations are in the business of handling claims and must necessarily handle suit papers and other legal process in the ordinary course of their business. They certainly should not be encouraged by the result in this case to lower their standards of care and caution in the handling of such papers. The burden must always be on such corporate party to show that the facts of each particular case constitute excusable neglect.'

252 N.E.2d at 444. We cannot say the trial court erred, as a matter of law, in refusing to excuse Siebert Oxidermo from the neglect of its insurance agent."

We last consider the appealability of an issue raised by Oxidermo in the December 4 Rule 59 Motion to Correct Error but not raised in the preceding Rule 60(B) Motion to Set Aside Default Judgment of June 28. As we have indicated, on the strength of the *Carvey* case, the appealable issues in this case were established in the June 28 Rule 60(B) motion. We have considered the issue of the trial court's refusal to grant the Rule 60(B) motion insofar as its allegation of entitlement to relief under Rule 60(B)(1) grounds of "excusable neglect" is concerned. However, in examining the Decem-

ber 4 Rule 59 motion we find an additional allegation of entitlement to relief from the judgment on a basis not suggested in the Rule 60(B) motion filed earlier.

This allegation of entitlement to relief is actually a dual claim, both parts of which are premised on Rule 60(B)(3). That subparagraph of the Rule sets forth as a reason for setting aside a default judgment "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . ." Ind. R.Tr.P. 60(B)(3). Both claims for relief are factually related to the conduct of attorneys in the case: Oxidermo's first attorney of record in the case, and Shields' attorney.

The allegation regarding Oxidermo's attorney is premised on the fact this attorney was actually in the employ of American States Insurance Company, the carrier responsible for defending Oxidermo and paying judgments against Oxidermo that were based on accidents occurring at the time Shields alleged his injuries occurred.

■ Oxidermo theorized since the attorney's employer was actually the insurance carrier, and because the carrier would not be responsible for paying the award if the default was not set aside, due to failure of Oxidermo to notify the carrier of the existence of the suit, the attorney did not really want to get the default set aside. In the Rule 59 motion Oxidermo asserted, "The record is replete with examples of [the attorney] carefully bringing out or volunteering information and evidence that would be detrimental to the interests of Oxidermo and favorable to American States Insurance Company's contemplated denial of liability." The only specific "evidence" further alluded to is the attorney's failure to cite a case in a brief to the trial court allegedly relevant and favorable to Oxidermo's position.

First, we observe Rule 60(B)(3) speaks of authorizing the setting aside of a default judgment for misconduct of an *adverse* party. Oxidermo's first attorney cannot be so characterized, and thus indeed if such misconduct occurred we do not see how relief from judgment was authorized under this part of Rule 60(B).

We also subscribe to the point of view of the Court of Appeals on this issue. The Court addressed this issue in its opinion on rehearing and said:

> "[W]e point out that on a daily basis defense attorneys employed by insurance carriers on behalf of policyholders are called upon to deal with matters in litigation where the interests of the policyholder and the carrier do not fully coincide. Under such circumstances the attorney's duty is, of course, to the insured whom he has been employed to represent. In response the defense bar has exhibited no inability to fully comply with both the letter and the spirit of Canon 5 of the Code of Professional Responsibility. If it were otherwise we suspect the desirability of requiring carriers to supply defense counsel would have long since disappeared as a term of the policy." *Siebert Oxidermo v. Shields, supra,* 430 N.E.2d at 403.

Finally, we would add we do not see in this case a record "replete with examples" of the attorney's attempts to lose the case, subtle or otherwise. To the contrary the attorney was a zealous, though ultimately unsuccessful, advocate on Oxidermo's behalf.

The second claim of entitlement to relief due to misconduct of an adverse party that is raised in the Rule 59 motion that does not appear in the Rule 60(B) motion preceding it relates to the conduct of Shields' attorney. Oxidermo claimed Shields' attorney misrepresented facts regarding the service of process on Oxidermo at the May 25 hearing on his Motion for Default.

The issue that first presents itself is whether or not Oxidermo might raise such claim for the first time in the Rule 59 motion without having raised it in the preceding Rule 60(B) motion.

■ Ordinarily, a claim of error may not be raised for the first time in a Motion to Correct Error. *See, Bradburn v. State,* (1971) 256 Ind. 453, 269 N.E.2d 539; *Macauley v. Funk,* (1977) 172 Ind.App. 66, 359 N.E.2d 611.

The misconduct of Shields' attorney, if it occurred at all, was certainly discoverable by Oxidermo when the June 28 Rule 60(B) motion was filed. We do not believe Oxidermo should be permitted to appeal the denial of the Rule 60(B) motion on grounds that were available to it when that motion was filed but were not raised until a later time when the Rule 59 motion was filed. To do so would run counter to the *Carvey* case prohibition against the repetitive filing of Rule 60(B) motions. The trial court ruled properly in overruling the first Rule 59 motion insofar as it alleged entitlement to relief on Rule 60(B)(3) grounds due to alleged misconduct on the part of either attorney.

The unpublished memorandum decision of the Court of Appeals and the opinion on rehearing of that Court, published at 430 N.E.2d 401, are hereby vacated. The opinion of this Court, filed on December 7, 1982, is hereby withdrawn. Oxidermo's Petition for Rehearing is granted. The Petition to Transfer of appellee Hershell David Shields is granted; the Petition to Transfer of appellant Siebert Oxidermo is denied.

The trial court is in all things affirmed.

All Justices concur.