**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL C. PEEK**
Christopher & Taylor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**LARRY J. WAGNER**
**NOAH L. GAMBILL**
Wagner Crawford & Gambill
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PERFECT NORTH SLOPES, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A05-1305-CT-204 |
| | ) | |
| NICHOLAS A. SEARCY, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Jonathan N. Cleary, Judge
Cause No. 15D01-1211-CT-58

**October 15, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Perfect North Slopes, Inc. (North Slopes), appeals the trial court's denial of its motion to set aside default judgment entered at the request of Appellee-Plaintiff, Nicholas A. Searcy (Searcy).

We affirm.

## ISSUE

North Slopes raises two issues, one of which we find dispositive and which we restate as: Whether the trial court abused its discretion by refusing to set aside the default judgment.

## FACTS AND PROCEDURAL HISTORY

On the evening of January 20, 2012, North Slopes, a snow sports recreation facility located in Dearborn County, Indiana, remained open for night skiing. Searcy, a customer at the facility, slipped and fell from the ski lift chairs, sustaining serious injuries which required surgery. On February 29, 2012, Searcy's counsel sent a letter to North Slopes, advising it of his client's fall and injuries and requesting North Slopes to inform its insurance carrier of the incident. Searcy received no response. On March 15, 2012, Searcy sent a second letter to North Slopes indicating that "[i]f we have not heard from you or your insurance carrier within the next fourteen (14) days, we will file suit without further notice." (Appellant's App. p. 61).

On March 19, 2012, Searcy received a letter from Dylan West (West), Senior Claims Specialist with Willis of New Hampshire, Inc., notifying him that West

represented North Slopes' general liability carrier. In his letter, West requested additional information to evaluate Searcy's claim on its merits. On March 21, 2012, Searcy responded with some of the requested additional information.

On June 4, 2012, Searcy sent copies of incurred medical expenses to West and also asked him to confirm North Slopes' general liability policy limits. On June 12, 2012, West replied to Searcy, advising him of the policy limits. However, Searcy never received this letter. On August 27, 2012, Searcy sent another letter to West indicating that he had yet to be advised of North Slopes' policy limits. No response was received. Thereafter, on October 27, 2012, Searcy sent a third request to West to confirm North Slopes' liability policy limits. Again, West did not reply.

On November 30, 2012, Searcy filed a Complaint against North Slopes alleging negligence for failing to maintain the premises in a reasonably safe condition for its invitees. North Slopes' registered agent was served with the Complaint by summons, sent by certified mail. North Slopes failed to answer Searcy's Complaint. On January 7, 2013, Searcy filed a motion for default judgment, which the trial court granted on February 7, 2013. The trial court's Order also scheduled a separate hearing on the issue of damages.

On March 1, 2013, North Slopes, by counsel, filed an appearance as well as a motion to set aside the default judgment based on Indiana Trial Rule 60(B)(1). On April 9, 2013, the trial court summarily denied North Slopes' motion without a hearing.

North Slopes now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

North Slopes contends that the trial court abused its discretion when it denied the motion to set aside the default judgment pursuant to Indiana Trial Rule 60(B)(1) for excusable neglect based on a breakdown in communication.

Pursuant to Indiana's trial rules, once entered, a default judgment may be set aside because of mistake, surprise, or excusable neglect so long as the motion to set aside the default judgment is entered not more than one year after the judgment and the moving party also alleges a meritorious claim or defense. Ind. Trial Rule 55(C); 60(B)(1). Instances of excusable neglect include a breakdown in communication that results in a party's failure to appear. *Smith v. Johnson*, 711 N.E.2d 1259, 1262 (Ind. 1999). When deciding whether or not a default judgment may be set aside because of excusable neglect, the trial court must consider the unique factual background of each case because "no fixed rules or standards have been established as the circumstances of no two cases are alike." *Siebert v. Oxidermo, Inc., v. Shields*, 446 N.E.2d 332, 340 (Ind. 1983) (quoting *Grecco v. Campbell*, 386 N.E.2d 960, 961 (Ind. Ct. App. 1979)). Though the trial court should do what is "just" in light of the facts of the individual case, that discretion should be exercised in light of the disfavor in which default judgments are held. *Sears Roebuck and Co. v. Soja*, 932 N.E.2d 245, 249 (Ind. Ct. App. 2010), *trans. denied*.

On appeal, a trial court's decision to set aside a default judgment is entitled to deference and is reviewed for an abuse of discretion. *Id.* Any doubt of the propriety of a default judgment should be resolved in favor of the defaulted party. *Id.* Although a default judgment plays an important role in the maintenance of an orderly, efficient

4

judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation, in Indiana there is a marked judicial deference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. *Id*. at 185.

In several cases we have confronted the propriety of setting aside default judgments when a defendant's insurer or insurance agent is notified but counsel fails to timely appear and answer. In *Boles v. Weidner*, 449 N.E.2d 288 (Ind. 1983), our supreme court affirmed a trial court's judgment to set aside a default judgment, finding excusable neglect where the defendant passed the summons and complaint on to his independent insurance agent, to be forwarded on to the insurer. *Id*. at 290. The court held that "since [the defendant] did not hear from anyone, and had taken the steps expected of him, it certainly is reasonable for the trial court to find there was excusable neglect justifying setting aside the default judgment." *Id*. at 291.

In *Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332 (Ind. 1983), the trial court refused to set aside a default judgment where the defendant had forwarded the "suit papers" to its insurance agent, who failed to get them to the proper insurance carrier on time. *Id*. at 334. The court affirmed, observing that the trial court could have based a finding of excusable neglect or mistake upon the apparent misunderstanding between the defendant and its insurance agent but chose not to do so, and noting, "[m]ore significantly, under the evidence it was not compelled to do so." *Id*. at 340.

5

More recently, in *Sears Roebuck and Co. v. Soja*, 932 N.E.2d 245 (Ind. Ct. App. 2010), *trans. denied*, we affirmed the trial court's refusal to set aside a default judgment entered against Sears. After Sears forwarded Soja's complaint to its claims adjuster, the claims adjuster contacted the general counsel of Razor, who was required to defend and indemnify Sears in the lawsuit. *Id*. at 247. General counsel, after waiting to get a written tender from the claims adjuster officially informing him of the duty to defend, never directed an attorney to enter an appearance for Sears as no written tender was ever received. *Id*. Even though we noted that a miscommunication occurred between the claims adjuster and legal counsel early on in the proceedings, we concluded that the claims adjuster's subsequent conduct "amounted to inattention" as she waited more than seven months to do any follow-up on the suite or even confirm that counsel had indeed appeared for Sears *Id*. at 250.

Accordingly, in two of these three cases, *Boles and Siebert Oxidermo*, the courts deferred to the decision of the trial court in ruling upon a motion to set aside a default judgment. And in *Sears*, we found that the facts compelled a finding of inattentiveness, not excusable neglect. Thus, to resolve this appeal, the overriding issue is whether the circumstances of this case require us to conclude that the trial court abused its discretion by refusing to set aside its prior default judgment. In accord with our disfavor of default judgments, our preference for disposition of cases on their merits, and our deference to the trial court's decision in ruling upon motions to set aside default judgments, the controlling question is not whether there has been a "breakdown in communication" but

whether there is "even slight evidence of excusable neglect." *Coslett v. Weddle Bros. Const. Co, Inc.*, 798 N.E.2d 859, 862 (Ind. 2003).

Here, North Slopes argues that it handled the suit in accordance with its internal office procedure. Bev Weaver (Weaver), North Slopes' office manager, affirmed that any mail directed to North Slopes' registered agent would be placed in the agent's mail basket, who after checking his mail would, in turn, give the documents to the Director of Snow Sports and Safety. The Director would then hand the documents to Weaver to notify West, who would retain counsel to defend North Slopes. Weaver represented that Searcy's file, an expandable folder on Weaver's desk, was opened in March 2012, upon receipt of Searcy's counsel's letter. Pursuant to the customary proceedings, Weaver stated that she faxed this letter to West.

Weaver noted in her affidavit that an employee, Stephanie Nutley (Nutley), signed for a "certified mail document" and placed it in the registered agent's mail basket. (Appellant's App. p. 45). The registered agent attested that he "never saw the lawsuit, Summons or Complaint." (Appellant's App. p. 43). Weaver also stated that she never saw the Complaint until she received the default judgment on February 13, 2013. After faxing the Order to West, she "looked into the Searcy folder on [her] desk" where she found a copy of the Complaint. (Appellant's App. p. 45). She then surmised that "Rather than go through normal procedure someone put the Summons and Complaint in the folder on my desk." (Appellant's App. p. 45).

Meanwhile, the communication between West and Searcy had stalled. On June 4, 2012, Searcy requested West to confirm North Slopes' general liability policy limits.

7

Even though West alleges that he responded to Searcy with the information, Searcy never received a reply.

Although West's nonresponsiveness to Searcy's counsel is a contributing factor in the filing of the Complaint, we find that North Slopes' handling of the Complaint is the immediate cause of the "breakdown of communication" as it triggered North Slopes' non-appearance in the cause. *See Smith*, 711 N.E.2d at 1262. The affidavits submitted by North Slopes in support of its motion to set aside raise more questions than answers. Nutley never submitted an affidavit. While Weaver's affidavit states that Nutley remembered placing the letter in the registered agent's mail basket, the registered agent denied ever having seen it. Weaver's statement of finding the Complaint in the folder on her desk gives rise to the inference that the certified mail had been opened, but there is no indication as to who opened it. It is North Slopes' burden to establish excusable neglect. Based on the facts before us, we conclude that North Slopes failed this burden.[1]

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied North Slopes' motion to set aside default judgment pursuant to T.R. 60(B)(1).

Affirmed.

ROBB, C. J. and KIRSCH, J. concur

---

[1] Because we do not find excusable neglect, we do not need to analyze whether North Slopes presented a meritorious defense.

8