Charles F. BORING, Jr., Appellant–
Respondent,

v.

Marvina Austin BORING,
Appellee–Petitioner.

No. 43A03–0205–CV–157.

Court of Appeals of Indiana.

Sept. 27, 2002.

Charles F. Boring, Jr., Miami Correctional Facility, Bunker Hill, IN, Appellant Pro Se.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-respondent Charles F. Boring, Jr. ("Husband") appeals the trial court's order dissolving his marriage to appellee-

petitioner Marvina Austin Boring ("Wife"). We affirm.

### Issue

Husband raises one issue for appeal, which we restate as whether the trial court erred in denying his motions for appointment of pauper counsel.

### Facts and Procedural History

Husband and Wife were married on July 25, 1997, and were separated on January 30, 2000. On October 29, 2001, Wife filed *pro se* a petition for dissolution of marriage, in which she stated that the parties had no dependent children; that she was not pregnant of Husband; that Husband currently resided at the Miami Correctional Facility in Bunker Hill, Indiana; and that the marriage had suffered an irretrievable breakdown. On November 9, 2001, Husband filed *pro se* a request for appointment of pauper counsel, in which he stated that he was "indigent by meaning of the law and relie[d] upon a mere stipend of $13.00 per month state pay from prison labor." Appellant's App. at 18. The trial court denied Husband's request that same day.

On February 15, 2002, Husband filed *pro se* a verified motion for relief from judgment under Indiana Trial Rule 60[1] in which he alleged that the trial court had abused its discretion in denying his request for appointment of pauper counsel. The trial court took the matter under advisement and on February 26, 2002, entered an order denying Husband's motion for relief from judgment. In an accompanying memorandum, the trial court made the following observations:

> This Court, in initially denying appointment of counsel and by ruling on Respondent's Verified Motion for Relief from Judgment this day, appreciates the

dictate of Indiana Code § 34–10–1–2 which requires the appointment of counsel and which under the holding in *Sholes [v. Sholes,* 760 N.E.2d 156 (Ind. 2001)], sets forth the procedure for the Court to determine when counsel must be appointed, that is: (1) the litigant is to apply to the Court for leave to proceed as "an indigent person"; and (2) if the Court finds that the applicant is both indigent and without sufficient means to prosecute or defend the action, the trial court shall appoint counsel for the applicant.

Admittedly, and as appears from the record in this cause, [Husband] has not filed an affidavit of indigency, however, even assuming the indigent status of [Husband], as the Court is willing to do in this instance, the inquiry of the Court does not stop there, but rather requires an inquiry as to whether [Husband] has "sufficient means". Interestingly, *Sholes, supra,* requires the Court to examine the applicant[']s status in relation to the type of action pending before it. If the action is of the kind that is often handled by persons of means, without counsel, the Court may find that even an indigent applicant has "sufficient means" to proceed without appointed counsel. This Court notes from its own experience that roughly one-half of its present pending case load of some 600 domestic relations actions (actually 602 as of December 31, 2001) were prosecuted pro se. Further, from the petition it would appear that there are no children born to the parties to the action, thus the complex issues of custody, visitation and support are nonexistent. Further, assuming that [Husband] is indigent as the Court has assumed and as [Husband]

---

1. We presume that Husband sought relief from the trial court's denial of his request for appointment of pauper counsel under Indiana Trial Rule 60(B). Husband failed to specify, however, on which of the rule's eight enumerated reasons for relief his motion was based.

has urged, then it would be unlikely that the dissolution proceeding would involve division and allocation of property. To the extent that indebtedness is an issue, the Court would note that with regard to joint indebtedness, if any, the ruling of the Court as to division thereof would not be binding upon the third party creditor, and thus the need for counsel to bring about an allocation of debt seems remote. Further, given the "no fault" status of the underlying proceeding, a defense to the action seems unlikely to be persuasive. Finally, the Court notes that this Court, as well as many courts throughout the State of Indiana, has provided forms for the use of pro se litigants and the State of Indiana has pro se litigant forms on its website, thus the clear implication to this Court at least is that a dissolution proceeding without property, and without children involved, is one wherein even an indigent applicant has sufficient means to proceed without appointed counsel.

This Court does not mean to create a situation where counsel should never be appointed in this category of case, but rather it has, in this instance, looked into the particular issues presented by the record thus far and made a determination that [Husband] does not require appointed counsel and thus his motion has been denied.

*Id.* at 6–7.

On March 4, 2002, at Wife's request, the trial court set final hearing for March 25, 2002. On March 21, 2002, Husband filed *pro se* an application for leave to defend as a poor person and for appointment of counsel, to which he attached an affidavit of indigency, a motion for order of conveyance, and a motion for postponement of

final hearing. In his application, Husband asserted that

> [t]he matters in this proceeding are too complex for him, an untrained layman at law, to comprehend, common property is involved, there may be a question of child support, checks in his name have been illegally signed without power of attorney or his permission and the monies procured thereby utilized by [Wife] for purposes unknown to [Husband], and his legal rights must be protected by counsel.

*Id.* at 21. The trial court denied Husband's application and motions that same day. Husband filed similarly titled motions the following day, all of which the trial court denied.

On March 25, 2002, Wife appeared *pro se* at the final hearing. The trial court informed Wife that it had "just received another letter from [Husband]"[2] and stated, "[O]f course you know [Husband] won't be here." *Id.* at 11. Wife testified that she and Husband did not have any children, that she was not pregnant, and that there was no property to divide. When asked why Husband "ha[d] been trying to get [the trial court] to hold off on this" since the petition was filed, Wife responded, "Cause he's trying to get me in trouble and he just don't want a divorce." *Id.* at 13. That same day, the trial court entered an order dissolving the marriage in which it found that the parties had no dependent children, that Wife was not pregnant of Husband, and that "all assets and debts [had] been divided between the parties." *Id.* at 4.

On April 19, 2002, Husband filed *pro se* a verified motion for leave to proceed in forma pauperis on appeal and a supporting

---

**2.** Assuming that this letter relates to something other than the repetitive motions Husband filed on March 21 and 22, 2002, we note that the letter does not appear in the record before us on appeal.

affidavit. On May 28, 2002, this court granted Husband's motion.

### Discussion and Decision

■ Initially, we note that Wife did not submit an appellee's brief.

> In such a situation, we do not undertake the burden of developing arguments for the appellee. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish *prima facie* error. *Prima facie*, in this context, is defined as "at first sight, on first appearance, or on the face of it." Where an appellant is unable to meet that burden, we will affirm.

*Damon Corp. v. Estes*, 750 N.E.2d 891, 892–93 (citations omitted). We conclude that Husband has failed to meet his burden here.

■ As a threshold matter, Husband contends that "the trial court had to hold a hearing to consider his indigency status[.]" Appellant's Br. at 13. Indiana Code Section 34–10–1–1 provides that "[a]n indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person." At the time that Husband filed his motions for appointment of pauper counsel, Indiana Code Section 34–10–1–2 provided in relevant part that "[i]f the court is satisfied that a person who makes an application described in section 1 of this chapter does not have sufficient means to prosecute or defend the action, the court shall: (1) admit the applicant to prosecute or defend as an indigent person; and (2) assign an attorney to defend or prosecute the cause." [3] Clearly, neither statute requires a trial court to hold a hearing to determine indigency. Husband refers us to the "open courts" provision of Article I, Section 12 of the Indiana Constitution,[4] but cites no authority mandating an indigency hearing in civil cases.[5] Given Husband's failure to establish *prima facie* error on this point, we now turn to his contention that Indiana Code Sections 34–10–1–1 and 34–10–1–2 "required the Court to permit him to defend this cause as a poor person and to appoint some competent attorney to represent him in his proceeding." Appellant's Br. at 9.

■ In *Sholes*, our supreme court stated that

> [t]he procedure for the trial court to determine when counsel must be appointed [in civil cases] is: (1) the litigant is to apply to the trial court for leave to proceed "as an indigent person"; and (2) if the trial court finds that the applicant is *both* indigent *and* without sufficient means to prosecute or defend the action, the trial court shall appoint counsel for the applicant.
>
> Section 34–10–1–1 places the burden upon the party seeking to proceed "as an indigent person" to demonstrate that he or she is indigent *and* without "sufficient means."

---

**3.** The legislature amended Indiana Code Section 34–10–1–2 effective March 26, 2002. The amended statute does not apply to Husband's case. *See Chesnut v. Roof*, 665 N.E.2d 7, 9 (Ind.Ct.App.1996) ("Absent an express indication otherwise, we presume that the legislature intends statutes and amendments to apply prospectively.").

**4.** Article I, Section 12 of the Indiana Constitution provides that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

**5.** Additionally, we note that Husband never requested an indigency hearing in his motions for appointment of pauper counsel.

*Sholes,* 760 N.E.2d at 160 (emphases added). In the instant case, we need not address the question of indigency because the trial court assumed that Husband was indigent for purposes of his motion.

■ As for the question of sufficient means, the *Sholes* court explained that

[w]hether the applicant has "sufficient means" goes beyond a mere snapshot of the applicant's financial status. Rather, the court must examine the applicant's status in relation to the type of action before it. If the action is of the kind that is often handled by persons of means without counsel, the court may find that even an indigent applicant has "sufficient means" to proceed without appointed counsel. . . .

We do not mean to create blanket categories of cases in which counsel should never be appointed. Rather, the court should look to the particular issues presented in the action and make a determination of whether the indigent applicant requires appointed counsel.

*Id.* at 161 (citation omitted); *see also id.* at 166 ("It is for the trial court to determine whether [appellant] has a colorable bona fide dispute over issues warranting the expense of counsel."). Here, the trial court properly and conscientiously "look[ed] to the particular issues presented in the action" and determined that Husband had sufficient means to proceed without appointed counsel.

Husband claims to the contrary that

[t]he matters involved in this proceeding are too complex for him, an untrained layman at law, to comprehend, because [Wife] has made erroneous claims in her petition and in testimony at final hearing, an adoption proceeding is pending and there may be a question of child

support, personal property and effects both are involved, checks in [Husband's] name have been illegally signed by [Wife], without power of attorney or his permission, and the monies procured thereby utilized by [Wife] for purposes unknown to [Husband], and his legal rights must be protected by counsel.

Appellant's Br. at 12.[6] We first observe that the "matters involved" are essentially factual issues requiring no formal legal training to "comprehend" or to present to a trial court in a dissolution proceeding; in fact, Boring recited these issues in some detail in an affidavit supporting his motion for leave to proceed in forma pauperis on appeal. *See* Appellant's App. at 40–42. We further observe that "with access to a prison library, [Husband] was able to present timely, coherent, even persuasive pleadings, in furtherance of his [response to Wife's petition]." *Zimmerman v. Hanks,* 766 N.E.2d 752, 759 (Ind.Ct.App. 2002) (Bailey, J., concurring). As was the case with Zimmerman's small claims action, "the nature of [Husband's] dispute was not complex, and his ability to effectively use the legal system was readily apparent." *Id.* (Bailey, J., concurring) (footnote omitted). In summary, Husband has failed to establish *prima facie* error with respect to the trial court's determination that he had sufficient means to proceed without appointed counsel.

Affirmed.

KIRSCH, J., and DARDEN, J., concur.

---

6. We note that Husband never mentioned an adoption proceeding in the motions he filed with the trial court before the final hearing. Since Husband does not contend that he was wrongfully deprived of an opportunity to appear at the final hearing, he may not now complain of any allegedly "erroneous claims" in Wife's testimony.