Dean MAUST, II, Appellant–Defendant,

v.

ESTATE OF Matthew B. BAIR, by Personal Representative Melody BAIR, and Alexander Matthew Gene Bair, Individually, Appellees–Plaintiffs.

No. 50A04–0605–CV–270.

Court of Appeals of Indiana.

Jan. 12, 2007.

Dean Maust, II, Pendleton, IN, Appellant pro se.

David Holmes, Holmes & Walter, LLP, Plymouth, IN, Attorney for Appellee Estate of Matthew B. Bair.

William L. Wilson, Anderson, Agostino & Keller, PC, South Bend, IN, Attorney for Appellee Alexander Matthew Gene Bair.

## OPINION

BAKER, Judge.

Appellant-defendant Dean Maust, II appeals the trial court's denial of his motion for pauper counsel and the trial court's order granting the Estate of Matthew B. Bair, by Personal Representative Melody Bair (the Estate), and Alexander Matthew Gene Bair's (Alexander) (collectively, the Plaintiffs) motions for default judgment. Finding no error, we affirm the trial court's judgment.

## *FACTS*

In December 2004, Maust was sentenced to the Indiana Department of Correction for sixty-five years following his conviction for the murder of Matthew Bair.[1] *See Maust v. State,* 50A03–0502–CR–80, slip op. at 3, 841 N.E.2d 669 (Ind.Ct.App. Dec. 27, 2005). On August 23, 2005, the Plaintiffs filed a complaint for wrongful death against Maust and his co-defendant and brother, Paul Maust.[2] The Plaintiffs alleged that Bair "died of gunshot wounds inflicted by Dean Maust" and that as a result, the Estate had "incurred funeral expenses for the decedent [Bair]" and Bair's two-year-old son, Alexander, "ha[d] and w[ould] suffer the intangible losses of his father's, Matthew Bair's, care, love, affection, and parental guidance during his age of minority." Appellant's App. p. 6–7. At the time the Plaintiffs filed their wrongful death complaint, Maust was incarcerated at the Pendleton Correctional Facility. The Plaintiffs sent the complaint and a summons via certified mail to Maust at the following address: "Dean Maust, DOC # 146665, c/o Pendleton Correctional Facility [sic], PostOffice [sic] Box 28, Pendleton, IN 46064–0028." *Id.* at 8. On August 25, 2005, the certified mail receipt was signed by "Mike Silver." *Id.* While the record does not reveal the date that Maust received a copy of the complaint, it is undisputed that Maust was provided with a copy of it.

On January 27, 2006, the Estate filed a motion for default judgment against Maust under Indiana Trial Rule 55, alleging that Maust had failed to file an answer or responsive pleading. That same day, the trial court set a hearing on the motion for March 24, 2006. The Estate sent the motion for default via certified mail to Maust at the same address as the complaint. On

---

1. The judge that presided over Maust's criminal trial was the Honorable Robert O. Bowen of the Marshall Superior Court. *See Maust v. State,* 50A03–0502–CR–80, slip op. at 1, 841 N.E.2d 669 (Ind.Ct.App. Dec. 27, 2005).

2. The wrongful death action was filed in the Marshall Superior Court with the Honorable Robert O. Bowen presiding. *See* Appellant's App. p. 1.

February 2, 2006, the certified mail receipt was signed by "Aimee Parker." *Id.*

On February 17, 2006, Maust filed a: (1) Pro–Se Responding Party's Limited Entry of Appearance; (2) Response to Plaintiff's Verified Motion for Judgment by Default; and (3) Verified Application for Leave to Defend Action as a Poor Person and For Assignment of Counsel. In his limited appearance, Maust stated, in part:

> The Responding party is entering this *pro se* appearance for the limited purpose of responding to Plaintiff's Verified Motion for Judgment By Default and to request the Court to appoint counsel to defend this action for him. By entering this limited appearance, Dean Maust intends no waiver of having counsel enter a subsequent appearance for him in this matter nor does Maust intend the waiver of any rights or defense he has in this matter.

*Id.* at 26. In his response to the Estate's motion for default, Maust attached a copy of the August 2005 complaint and summons and argued that the motion for default should be denied because the Plaintiffs failed to properly serve the complaint and summons upon him in accordance with Indiana Trial Rule 4.3.[3] Specifically, Maust alleged that he was not "duly and legally served" with the summons and complaint because they were addressed to him and were not addressed "in care of the official in charge of the institution" at which he was imprisoned. *Id.* at 30. In his motion for pauper counsel, Maust con-

tended that "[t]he issues involved herein are complex and will require the assignment of counsel to complete discovery, interview witnesses, conduct an investigation into viable defenses, and make court appearances on Defendant Maust's behalf since Defendant Maust will not be able to personally attend hearings and trial while he is incarcerated." *Id.* at 33. That same day, the trial court denied Maust's motion for pauper counsel, noting that "COUNSEL NOT ASSIGNED AT PUBLIC EXPENSE[.]" *Id.* at 38.

On March 22, 2006, Alexander also filed a motion for default judgment against Maust. On March 24, 2006, the trial court held a hearing on the two default judgment motions.[4] During the hearing, the Estate and Alexander presented evidence regarding their damages resulting from Bair's wrongful death.

On March 28, 2006, the trial court issued an order granting the Plaintiffs' motions for default judgment against Maust. Specifically, the trial court found that "Maust was properly served a copy of the Complaint on February 2, 2006 and has failed to answer the complaint." *Id.* at 43. Thereafter, the trial court entered judgment against Maust and in favor of Alexander in the amount of $988,416.00 and in favor of the Estate in the amount of $9,480.98. Maust now appeals the trial court's grant of the Plaintiffs' motions for default judgment and the trial court's denial of his motion for pauper counsel.

---

**3.** Indiana Trial Rule 4.3 provides:

Service of summons upon a person who is imprisoned or restrained in an institution shall be made by delivering or mailing a copy of the summons and complaint to the official in charge of the institution. It shall be the duty of said official to immediately deliver the summons and complaint to the person being served and allow him to make provisions for adequate representation by

counsel. The official shall indicate upon the return whether the person has received the summons and been allowed an opportunity to retain counsel.

**4.** At the hearing, the Estate and Alexander appeared by counsel; Maust did not appear and made no request to appear telephonically.

## DISCUSSION AND DECISION

### I. Default Judgment

Maust argues that the trial court erred by granting the Plaintiffs' motions for default judgment. Maust acknowledges that he was aware of the wrongful death suit against him and admits that he did not file an answer to the complaint but argues that the Plaintiffs were not entitled to default judgment because they did not properly serve him with the complaint and summons pursuant to Indiana Trial Rule 4.3.

Initially, we note that Maust filed his notice of appeal following the entry of the trial court's order granting the Estate and Alexander's motions for default judgment, and he did not file a motion to set aside the default judgment under Indiana Trial Rule 60(B). However, Indiana Trial Rule 55(C) provides that "[a] judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of [Indiana Trial] Rule 60(B)." In *Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332, 337 (Ind. 1983), the Indiana Supreme Court addressed the procedure for challenging an entry of default judgment. Specifically, the court held that "the proper procedure in the Indiana Rules of Trial Procedure for setting aside an entry of default or grant of default judgment thereon is to first file a Rule 60(B) motion to have the default or default judgment set aside." *Siebert Oxidermo*, 446 N.E.2d at 337 (emphasis added). Thereafter, an appeal may be taken from the trial court's ruling. *Id.*

Maust's attempt to appeal the grant of the Plaintiffs' motions for default judgment is improperly before us because he failed to first file a motion to set aside the default judgment under Indiana Trial Rule 60(B) following the trial court's order granting the Plaintiffs' motions for default judgment. *See Siebert Oxidermo*, 446 N.E.2d at 337; *see also Sekerez v. Jasper County Farm Bureau Coop. Ass'n, Inc.*, 458 N.E.2d 286, 286 (Ind.Ct.App.1984) (dismissing the appellant's appeal from the trial court's entry of a default judgment because the appellant did not obtain a ruling on a Trial Rule 60(B) motion and "[w]ithout a ruling on the 60(B) motion, he [was] unable to perfect an appeal, since no error [was] thereby preserved").

Nevertheless, even if he would have filed a motion to set aside the default judgment, Maust's argument—that the entry of default was erroneous because of improper service of process—is without merit. Maust merely contends that the entry of default against him was improper because the Plaintiffs mailed the complaint and summons directly to him instead of the "official in charge" of the prison where he was incarcerated as set forth in Indiana Trial Rule 4.3. However, under Indiana Trial Rule 4.15(F), "[n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him[.]" "Thus, Trial Rule 4.15(F) will prevent service of process which is technically deficient from defeating the personal jurisdiction of a court." *Reed Sign Service, Inc. v. Reid*, 755 N.E.2d 690, 696 (Ind.Ct.App.2001). "A defendant can waive the lack of personal jurisdiction and submit himself to the jurisdiction of the court if he responds or appears and does not contest the lack of jurisdiction." *Hill v. Ramey*, 744 N.E.2d 509, 512 n. 7 (Ind.Ct.App.2001). In addition, a party shall be estopped from challenging the trial court's jurisdiction where the party has voluntarily availed itself or sought the benefits of the court's jurisdiction. *Kondamuri v. Kondamuri*, 799 N.E.2d 1153, 1159 (Ind.Ct.App.2003).

Here, Maust entered an appearance and asked affirmative relief in the form of his request for pauper counsel. Furthermore, Maust acknowledges that he was aware of the pending wrongful death action against him before the trial court entered the default judgment against him, and yet, he did not file an answer or responsive pleading. Thus, Maust has not shown that he was prejudiced by the alleged insufficient process, and the trial court's entry of default judgment against him was not erroneous.[5]

## II. Pauper Counsel

Maust argues that the trial court's denial of his motion for pauper counsel was erroneous. Specifically, Maust states that he "is not contending that the Trial Court must appoint pauper counsel to defend this action for him" but contends that the trial court erred by "summarily denying his [motion for pauper counsel] without first making a determination of whether or not Maust is both indigent and without sufficient means to defend against Plaintiffs' action and whether or not Maust has a colorable bona fide dispute of issues warranting the expense of counsel." Appellant's Br. p. 13.

Indiana Code section 34–10–1–1 provides that "[a]n indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person." Indiana Code section 34–10–1–2 provides, in part:

\* \* \* \* \*

(b) If the court is satisfied that a person . . . does not have sufficient means to prosecute or defend the action, the court:

(1) shall admit the applicant to prosecute or defend as an indigent person; and

(2) may, under exceptional circumstances, assign an attorney to defend or prosecute the cause.

(c) The factors that a court may consider under subsection (b)(2) include the following:

(1) The likelihood of the applicant prevailing on the merits of the applicant's claim or defense.

(2) The applicant's ability to investigate and present the applicant's claims or defenses without an attorney, given the type and complexity of the facts and legal issues in the action.

(d) The court *shall deny* an application made under section 1 of this chapter if the court determines any of the following:

(1) The applicant failed to make a diligent effort to obtain an attorney before filing the application.

---

**5.** Maust argues that *In re Adoption of M.A.S.*, 695 N.E.2d 1037 (Ind.Ct.App.1998), which Maust refers to as *Parks v. Jarboe*, is dispositive and requires the reversal of the trial court's order granting the Plaintiffs' motions for default judgment. In that case, a summons and notice of an adoption petition involving the adoption of an incarcerated father's child was sent to the prison but not delivered to the father. *M.A.S.*, 695 N.E.2d at 1038–1040. Thus, the incarcerated father had no notice of the adoption proceedings prior to the trial court's grant of the petition for adoption. We reversed the trial court's grant of the petition for adoption because service of the adoption petition on the father was defective and did not comply with Indiana Trial Rule 4.3. *Id.* at 1040. However, unlike the father in *M.A.S.* who did not have notice of the pending adoption action involving him prior to the trial court's judgment, Maust had knowledge of the wrongful death action pending against him and even filed an appearance in the action and sought affirmative relief from the trial court by requesting counsel prior to the trial court's ruling granting the Plaintiff's default judgment motions.

(2) The *applicant is unlikely to prevail on the applicant's claim or defense.*

\* \* \* \* \*

(Emphases added).

■ "[A] prisoner has no absolute right to counsel" in civil cases. *Sabo v. Sabo,* 812 N.E.2d 238, 242 (Ind.Ct.App.2004) (citing *Sholes v. Sholes,* 760 N.E.2d 156, 166 (Ind.2001)). The *Sholes* court held that in order to decide whether to appoint counsel under Indiana Code section 34–10–1–2, the trial court must determine whether the applicant is "an indigent person" and without "sufficient means" to prosecute his action. *Sholes,* 760 N.E.2d at 160. The trial court must further determine whether the applicant has a colorable bona fide dispute over issues warranting the expense of counsel. *See id.* at 166. However, the burden is upon the party seeking to proceed as an indigent person to demonstrate that he meets the statutory requirements for the appointment of counsel. *Id.* at 160 (citing Ind.Code § 34–10–1–1).

Additionally, our Supreme Court explained that a determination of "indigency" is not to be made on a superficial examination of income and ownership of property but must be based on as thorough an examination of the defendant's total financial picture as is practical. *Id.* at 161. The trial court must balance the applicant's assets against his liabilities and consider the amount of the applicant's disposable income or other resources reasonably available to him after the payment of fixed or certain obligations. *Id.*

■ By contrast, the determination of whether an applicant has "sufficient means" goes beyond a mere snapshot of the applicant's financial status. *Id.* Rather, the trial court must examine the applicant's status in relation to the type of action before it. *Id.* Thus, if the action is of the type that is often handled by persons who are not indigent without the presence or assistance of counsel, the trial court may find that even an indigent applicant has "sufficient means" to proceed without appointed counsel. *Id.* In addition, there are not blanket categories of cases in which counsel should never be appointed. *Id.* Rather, the trial court should look to the particular issues presented in the action and make a determination of whether the indigent applicant requires appointed counsel. *Id.*

Here, after the Estate filed its motion for default judgment against Maust, he filed an affidavit of indigency and request for assignment of counsel in this wrongful death action against him. In his motion for pauper counsel, Maust contended that "[t]he issues involved herein are complex and will require the assignment of counsel to complete discovery, interview witnesses, conduct an investigation into viable defenses, and make court appearances on Defendant Maust's behalf since Defendant Maust will not be able to personally attend hearings and trial while he is incarcerated." Appellant's App. p. 33. That same day, the trial court denied Maust's motion for pauper counsel, noting that "COUNSEL NOT ASSIGNED AT PUBLIC EXPENSE[.]" *Id.* at 38.

Although the trial court did not explicitly note that Maust was indigent, we deduce that it implicitly found such to be so by virtue of Maust's incarceration and limited income and because the trial court's entry indicates that it proceeded to a determination of sufficient means—that is, whether Maust required appointed counsel given the particular issues presented in the wrongful death action—and a determination of whether Maust had a colorable bona fide dispute over issues warranting the expense of counsel.

Maust, who had the burden of showing that he met the statutory requirements for the appointment of counsel, has failed to meet that burden. Indeed, the trial judge that denied Maust's pauper counsel motion was the same judge that presided over Maust's criminal case wherein Maust was convicted beyond a reasonable doubt of murdering Bair; thus, the trial judge's notation that counsel would not be assigned at the public's expense can be considered an indication that Maust had sufficient means—specifically, that Maust would not require appointed counsel given that the particular issue presented in the wrongful death action was whether Bair's death was caused by a wrongful act of Maust—and that Maust did not have a colorable bona fide dispute over issues warranting the expense of counsel in this case claiming that Bair's death was caused by a wrongful act of Maust. To be sure, Indiana Code section 34–10–1–2(d)(2) provides that the trial court "shall deny" an applicant's motion for pauper counsel where the applicant is unlikely to prevail on his defense. Accordingly, we conclude that the court did not err by denying Maust's motion for appointed counsel.[6] *See e.g., Parks v. Madison County,* 783 N.E.2d 711, 727 (Ind.Ct.App. 2002) (holding that "even a cursory reading of *Sholes* vindicates the trial court's ruling" declining to appoint pauper counsel even though it granted the applicant's motion for waiver of the filing fee because the trial court determined that the defendant's claims were without merit); *Boring v. Boring,* 775 N.E.2d 1158, 1163 (Ind.Ct.App. 2002) (affirming the trial court's determination that the incarcerated husband had sufficient means to proceed without appointed counsel where the nature of the

incarcerated husband's dispute was not complex).

The judgment of the trial court is affirmed.

DARDEN, J., and ROBB, J., concur.

---

6. Maust also suggests that the trial court erred by failing to hold an indigency hearing on his motion for pauper counsel. *See* Appellant's Br. p. 20. However, neither Indiana Code section 34–10–1–1 nor section 34–10–1–2 requires a trial court to hold a hearing to determine indigency. *Boring v. Boring,* 775 N.E.2d 1158, 1162 (Ind.Ct.App.2002).