**In the Matter of the ESTATE OF Lawrence Medeford CARNES.**

**John M. Carnes, Appellant,**

v.

**Estate of Lawrence M. Carnes, Appellee.**

No. 90A02–0511–CV–1082.

Court of Appeals of Indiana.

Feb. 28, 2007.

Publication Ordered April 17, 2007.

John M. Carnes, Yuma, AZ, pro se.

George Sistevaris, Law Office of George Sistevaris, Fort Wayne, IN, James E. Beitler, Jr., Baumgartner & Beitler, Berne, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Pro-se appellant-petitioner John Carnes ("Carnes") appeals from a default judg- ment in the Wells Circuit Court after he failed to appear for the hearing. Conclud- ing that Carnes failed to first file a Trial Rule 60(B) motion with the trial court and that he has also failed to make any cogent argument, we affirm. In addition, as per its request, we award the Estate of Law- rence Carnes ("the Estate") appellate at- torney's fees and remand this cause to the trial court for a determination as to the amount of fees.

### Facts and Procedural History

This case is predicated upon a will con- test. Lawrence Carnes ("Lawrence"), the decedent, at one time lived in Indiana where he owned and farmed several tracts of land. In his later years, he moved to Arizona to be closer to his daughter, Lyn- ette Rice ("Rice"). While living in Ari- zona, Lawrence executed a will dated No- vember 28, 2001, which was prepared by attorney Calvin Allred ("Allred") in Co- chise County, Arizona. This will divided the estate between his two daughters, Rice and Charlene Louise Stevens ("Stevens"). The will also provided, "I leave nothing to my two sons, George Larry Carnes and John M. Carnes." Appellee's App. p. 26.

The will executed on November 28, 2001, replaced a will and codicil that Lawrence had executed on July 17, 1988, and Octo- ber 18, 2000, respectively. The July 17th will executed by Lawrence provided, "I realize, I have not provided for my son John M. Carnes and his natural children, if any. This omission is not the result of inadvertence or mistake. I hereby specifi- cally exclude my son John M. Carnes from benefiting under the provisions of this, my Last Will and Testament." *Id.* at 94. And again in the October 18, 2000 codicil to the will, Lawrence included the same provision disinheriting Carnes. *Id.* at 99.

On November 28, 2001, at the same time that Lawrence executed his last will, he

also executed a financial durable general power of attorney, naming Rice as his attorney in fact. Carnes subsequently filed a petition in the Wells Circuit Court in Indiana, seeking appointment as a temporary guardian over Lawrence, which was denied on October 15, 2002. Rice, acting as Lawrence's attorney in fact, then sold some of his real estate located in Wells County, Indiana, in November of 2002.

Carnes then challenged the validity of Rice's power of attorney in the Superior Court of Arizona, Cochise County, arguing that Lawrence lacked the requisite capacity to appoint Rice as his attorney in fact. The court held a hearing on March 18, 2003. After hearing testimony, it concluded that Lawrence was capable of understanding the nature and effect of executing a power of attorney on November 28, 2001, and the court further appointed Rice as Lawrence's guardian as he was incapacitated at that time due to Alzheimer's disease. Carnes appealed the trial court's order, but the Arizona Court of Appeals dismissed the appeal as being moot since Lawrence was deceased at that time.

Upon Lawrence's death, a domiciliary estate was opened in Cochise County, Arizona, to probate Lawrence's November 28, 2001 will. Pursuant to Lawrence's will, Rice, also an Arizona resident, was named personal representative of his estate. Carnes contested this will in the Arizona Superior Court of Cochise County, arguing that his father did not have the requisite testamentary capacity to execute the document and that Rice unduly influenced him in the preparation of his will. On January 29, 2004, the Arizona court ruled that Lawrence did have the requisite testamentary capacity to sign the will and that there was no undue influence. From the record before us, it appears that this case was never appealed.

On March 18, 2005, Rice petitioned the Wells Circuit Court in Indiana as a Domiciliary Foreign Personal Representative to place on file with the court evidence of her appointment as personal representative of Lawrence's estate and her intent to distribute the tracts of land located in Indiana pursuant to the provisions of Lawrence's will. On March 18, 2005, the Wells Circuit Court issued an order authorizing the appointment of Rice and allowing her to proceed in collecting and disbursing Lawrence's assets in Indiana.

On May 2, 2005, Carnes filed a motion with the Wells Circuit Court, again contesting the validity of the will and petitioning for the removal of Rice as personal representative of Lawrence's estate. Carnes also filed a motion petitioning the Wells Circuit Court to disallow the testimony of Lawrence's attorney, Allred, in the will contest. In support of his request, Carnes stated, "Mr. Allred and Ms. Rice are being *'thoroughly'* investigated in Arizona at this time, *about illegal activities!!*" Appellant's App. p. 30 (emphasis in original). The trial court held a hearing on October 24, 2005. Rice flew in from Arizona for this hearing, and Stevens, her sister, flew in from Oregon to be present. However, Carnes did not appear at this hearing. The trial court issued a default judgment in favor of the Estate, but nevertheless heard testimony and issued findings of fact and conclusions of law regarding Carnes's claims. Carnes directly appealed to this court from the trial court's default judgment.

## I. Trial Rule 60(B) Motion

Initially, we note that Carnes filed a notice of appeal following the entry of the trial court's order of default judgment for his failure to appear at the hearing in October 2005, but he did not first file a motion to set aside the default judgment under Indiana Trial Rule 60(B) (2007).

However, Indiana Trial Rule 55(C) provides that "[a] judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of [Indiana Trial] Rule 60(B)." In *Siebert Oxidermo Inc. v. Shields*, 446 N.E.2d 332, 337 (Ind.1983), the Indiana Supreme Court addressed the procedure for challenging an entry of default judgment. Specifically, the court held that "the proper procedure in the Indiana Rules of Trial Procedure for setting aside an entry of default or grant of default judgment thereon is to first file a Rule 60(B) motion to have the default or default judgment set aside." *Siebert Oxidermo*, 446 N.E.2d at 337. Thereafter, an appeal may be taken from the trial court's ruling. *Id.* *Maust v. Estate of Bair ex rel. Bair*, 859 N.E.2d 779, 783 (Ind.Ct.App.2007).

Carnes never filed a motion with the trial court alleging that his failure to appear at the hearing was due to excusable neglect, and that he should therefore be afforded relief from the default judgment under Indiana Trial Rule 60(B). Consequently, Carnes's attempt to appeal the merits of the trial court's order of default judgment is not properly before us. *See Siebert Oxidermo*, 446 N.E.2d at 337; *see also Sekerez v. Jasper County Farm Bureau Co-op. Ass'n, Inc.*, 458 N.E.2d 286, 286 (Ind.Ct.App.1984) (dismissing the appeal as prematurely filed because appellant directly appealed from a default judgment before first filing a Trial Rule 60(B) motion with the trial court).

## II. Cognet Argument

■ In addition, Carnes's brief fails to make any cogent legal argument. *See* Ind.

Appellate Rule 46(A)(8)(a) (2007). On appeal, Carnes has failed to comply with many of our appellate rules. It is well settled that pro se litigants are held to the same standard as are licensed lawyers. *Goossens v. Goossens*, 829 N.E.2d 36, 43 (Ind.Ct.App.2005) (citation omitted). Carnes's statement of issues does not conform to our appellate rules as it is merely a list of the trial court's findings. *See* App. R. 46(A)(4). His brief also fails to set forth any applicable standard of review. *See* App. R. 46(A)(8)(b). Furthermore, his statement of facts is a numbered list of his contentions, such as Rice's power of attorney not being legally obtained, Rice defrauding the courts in two states and libeling Carnes, and Allred being "conflicted" in the matter of Lawrence's will. See App. R. 46(A)(6). Carnes has also not supported the majority of his contentions with page references to the record or appendix, as is required by our rules. *See* App. R. 46(A)(7). For example, at one point Carnes contends that Lawrence's property in Indiana was resold at a large profit, and unacceptably directs us to "documents at Wells County Recorder's Office." Br. of Appellant at 7.

■ More importantly, in his argument section Carnes fails to make any cogent argument regarding his claims, nor does he cite to case or statutory authority in a manner that would allow us to find such cases.[1]

While it is the policy of the Appellate Court to determine the causes before them upon the merits, if such can reasonably be done, the rules of the Supreme Court relating to matters to be contained in the appellant's brief must

1. Carnes's brief cites to several Arizona cases by what appears to be cause numbers. He does not provide us with any citations to reporters, case names, dates or the names of

the courts that supposedly issued the opinions. We were therefore unable to locate any of these cases.

be substantially observed in order to present the question to the court. The appellant's brief should be so prepared that each Judge considering the brief alone and independently of the transcript can intelligently consider the questions presented to the court. It is not the duty of the court to search the record to reverse the lower court.

*In re Stuart's Estate,* 130 Ind.App. 130, 131, 159 N.E.2d 321, 322 (1959).

■ In his brief, Carnes claims that Rice defrauded him, that the validity of the will is still pending in Arizona courts, that Rice did not hold a valid power of attorney to sell property in Indiana before their father's death, and that attorney Calvin Allred had a conflict of interest and should not have given testimony regarding the validity of Lawrence's will. Carnes's citation to the record, and in particular to his petition to the Wells Circuit Court, does not factually support any of these assertions, nor does his argument attempt to explain the merits of these accusations. As we can find no factual basis for these flagrantly false claims, we deem them waived.[2]

■ Carnes also asserts that the trial court improperly issued an appeal bond to stay the enforcement of its order. However, he does not allege why such an order was improper, nor does he cite to authority on this issue. Therefore, this claim is also waived.

■ Carnes further alleges that the trial court improperly determined that he did not have standing to challenge the sale of real estate made by Rice as Lawrence's attorney of fact in November 2002. "To have standing, a party must demonstrate a personal stake in the outcome of the lawsuit and must show, at a minimum, it was in immediate danger of sustaining some direct injury as a result of the conduct at issue." *Shand Mining, Inc. v. Clay County Bd. of Comm'rs,* 671 N.E.2d 477, 479 (Ind.Ct.App.1996), *trans. denied.* As Carnes was disinherited by Lawrence's will, the trial court determined that he did not have a personal stake in the sale of Lawrence's real estate in Indiana, and therefore did not have standing to contest the sale.

Carnes contends that Rice sold Lawrence's property for $44,000 less than its actual value. Regarding the issue of his standing in the matter, he states,

> Mr. Carnes does have standing in this matter because the Arizona Courts have not finished with this matter in any way, shape or form; the matter hangs in limbo, as it now does, Appellant's chances of obtaining his legal, lawful, and rightful inheritance increase giving him more and more standing in all matters pertaining to his Dad's estate matter.

Br. of Appellant at 8. He then cites cause numbers, supposedly to the disposition of this matter in Arizona, but does not provide us with copies of the court's judgments. However, the copy of the Arizona court's judgment issued on July 19, 2004, and provided to us by the Estate, reveals that the Arizona court determined Lawrence's will to be valid and that Rice was the appropriate individual to act as person-

---

2. We further note that many of the issues that Carnes attempts to raise in this appeal are issues that he had previously raised in his will contest in the Arizona Superior Court, and which were subsequently decided against him. Under the doctrine of collateral estoppel, a right to raise issues regarding a will in Indiana that have already been decided in a foreign jurisdiction is lost when the contesting party was also a party to the proceeding in the foreign state. *Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 900 (Ind.Ct.App. 1992), *trans. denied.*

al representative of the Estate. Carnes has not supplied us with any evidence that this matter has been appealed or that the matter is still pending, and therefore we conclude that he has failed to make any cogent argument regarding the issue of his standing.

### III. Attorney's Fees

The Estate petitions us for an award of attorney's fees for the time it has spent "attempt[ing] to distill and analyze the arguments of Appellant" and for the "ongoing harassment by the Appellant of the personal representative." Br. of Appellee at 19.

 While Appellate Rule 66(E) (2007) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Manous v. Manousogianakis*, 824 N.E.2d 756, 767 (Ind.Ct.App. 2005) (citation omitted). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Id.* at 767–68. Just as pro se litigants are required to follow all of the rules of appellate procedure, they are also liable for attorney fees when they disregard the rules in bad faith. *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 95 (Ind.Ct.App.2001) (citation omitted).

 Indiana Appellate Rule 66(E) (2007) provides, in pertinent part, "[t]he Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Our discretion to award attorney's fees under this rule is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or

purpose of delay. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind.Ct.App.2003) (citation omitted). This appeal handily meets that standard.

Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. *Potter v. Houston*, 847 N.E.2d 241, 249 (Ind.Ct.App.2006) (citing *Thacker*, 797 N.E.2d at 346–47).

 As previously mentioned, Carnes's brief suffers from numerous procedural deficiencies. Carnes's statement of the issues is a list of the trial court's findings that he is contesting and does not "concisely and particularly describe each issue presented for review." App. R. 46(A)(4). His statement of the case is a recitation of his contentions and does not in any way "describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court." App. R. 46(A)(5). His statement of the facts is not in narrative form, but is rather another list of his accusations. *See*, e.g., Br. of Appellant at 6–7, stating,

FACT (1) It is still not clear that Lynette Rice's [power of attorney] Docu-

ment *was ever* or is a legally obtained document ... FACT (6) Lynette Rice defrauded the Courts in two states and also defrauded, defamed, and libeled Appellant with false affidavits and false testimony about Appellant, *his character,* and his *close relationship* with his Father.... FACT (7) Mr. Calvin Allred is *conflicted* since this matter began in his office on November 28, 2001. (Emphasis added.)

Carnes's statement of the facts is woefully lacking and does not provide this court with any factual basis upon which to review the merits of his claims. Procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Manous,* 824 N.E.2d at 768. Carnes's arguments on appeal constitute an incoherent and illogical tirade of accusations, repeated in every section of his brief, and which are completely unsubstantiated by the record. We conclude that Carnes's flagrant disregard of the form and content requirements of the rules of appellate procedure amounts to procedural bad faith.

■ Regarding whether Carnes's conduct amounted to substantive bad faith, we note that Carnes's Appendix does not contain crucial documents regarding the previous disposition of these issues made by the Superior Court of Arizona in Cochise County. For example, Carnes cites to his own petition filed with the Wells Circuit Court to support his contention that the will contest is still pending in the Arizona courts. See Br. of Appellant at 8, in which Carnes states,

This will document is still in the legal process in the Arizona Courts and no final signed non-appealable order stating the *true validity* of this document has come forth from the proper and appropriate Arizona Court ... Mr. Carnes does have standing in this matter because the Arizona Courts have not finished with this matter in any way, shape or form. (Emphasis added.)

Carnes did not, however, supply this court with a copy of the disposition from the Arizona court. Indiana Rule of Appellate Procedure 50(A)(b) (2007) states that the Appellant's Appendix shall contain "the appealed judgment or order, including any written opinion, memorandum of decision, or findings of fact and conclusions thereon relating to the issues raised on appeal."

Upon review of the Arizona court's judgment issued on July 19, 2004, and provided to us by the Estate, we find that the Arizona court concluded that Lawrence had the requisite capacity to execute his will on November 28, 2001, that he was not unduly influenced by Rice in executing this will, and that the motion to remove Rice as personal representative of the estate should be denied. Appellee's App. pp. 92–93. However, Carnes seems to ignore the court's ruling on the validity of the will by arguing· throughout his brief that his chances of inheriting from his father's estate "get better and better." Br. of Appellant at 6. Given the Arizona court's rulings along with the fact that Carnes has failed to supply us with any evidence that this appeal is still pending, we fail to understand how Carnes can in good faith contend that the will contest is still pending in Arizona. Rather, it appears that Carnes is being less than candid with this court.

Carnes also chooses to ignore a previous judgment by the Superior Court of Arizona in Cochise County, issued on March 18, 2003, while Lawrence was still living, which concluded that Rice's power of attorney for Lawrence was valid. Appellee's

App. pp. 80–83. A subsequent appeal of this case was dismissed by the Arizona Court of Appeals on January 28, 2005, as moot due to Lawrence's death. *Id.* at 86–88. Carnes's Appendix likewise failed to supply this court with copies of these previous cases, and he chooses to ignore the disposition in his brief.

 Substantive bad faith "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Wallace v. Rosen,* 765 N.E.2d 192, 201 (Ind.Ct.App.2002). From his brief it is clear that Carnes is ignoring the import of the Arizona precedent in his attempt to re-litigate his claims. Carnes has "steadfastly ignored unfavorable factual determinations and rulings" by both the Indiana and the Arizona trial courts. *See Potter,* 847 N.E.2d at 249. His brief is fraught with baseless accusations, and in particular unfounded accusations regarding Rice's conduct. Therefore, we conclude that the underlying litigation was merely another attempt to delay the probate of Lawrence's will and to harass Rice.

In summary, Carnes's relentless litigation, and in particular this meritless appeal, has caused a great expenditure of resources by the Estate, the trial court, and by this court on appeal in trying to decipher Carnes's arguments. We conclude that Carnes's conduct amounts to both procedural and substantive bad faith and rises to a level of egregiousness for which we award appellate attorney's fees. Accordingly, we remand this cause for a determination of appellate attorney's fees to be awarded to the Estate.

Affirmed and remanded for determination of appellate attorney's fees to the Estate.

KIRSCH, C.J., and SHARPNACK, J., concur.

## ORDER

On February 28, 2007, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish. The Appellee states that this Court's opinion has significant value as precedent, will assist the Indiana Bar, Judiciary and *pro se* litigants, and may serve to limit the number of frivolous appeals brought in the future. Therefore, Appellee requests this Court to publish this opinion.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

The Appellee's Motion to Publish is GRANTED and this Court's opinion heretofore handed down in this cause on February 28, 2007, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

All panel members concur.