FILED

Dec 04 2023, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



APPELLANT PRO SE

Charles Wenner
Bloomington, Indiana

ATTORNEYS FOR APPELLEES

Kathleen E. Field
Zach Wakefield (Certified Legal Intern)
Bloomington, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Andrew Wenner, <br> *Appellant-Defendant,* <br><br> v. <br><br> Gehrid Hensley, et al., <br> *Appellees-Plaintiffs* | December 4, 2023 <br><br> Court of Appeals Case No. 23A-SC-973 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Emily A. Salzmann, Judge <br><br> The Honorable Stephen R. Galvin, Senior Judge <br><br> Trial Court Cause No. 53C08-2212-SC-1253 |

**Opinion by Chief Judge Altice**
Judges Weissmann and Kenworthy concur.

**Altice, Chief Judge.**

## Case Summary

Charles Andrew Wenner, pro se, appeals a small claims judgment issued against him and in favor of Haynen Johnson, Gehrid Hensley, and Quinn Kaiser (collectively, Tenants). Because his appeal is permeated with procedural bad faith and presents no coherent arguments, we find all issues raised by Wenner to be waived, and we grant Tenants' request for appellate attorney's fees.

We affirm and remand.

## Facts & Procedural History

Wenner owns a rental property at 702 South Washington Street in Bloomington. The residential rental occupancy permit for this property was revoked in June 2020 by Housing and Neighborhood Development (HAND), a department of the City of Bloomington. According to Wenner, who lives out of the country, the property had been overtaken by squatters and drug addicts for some time before the revocation.

On January 19, 2021, HAND issued Wenner a temporary rental occupancy permit. This permit expressly allowed Wenner to rent out only the house, not the "accessory structure" on the property (the garage), which remained out of compliance with the housing codes. *Exhibits* at 61.

Hensley saw Wenner's rental listing online, filled out an application, and then spoke with Wenner over the phone. Hensley expressed that there would be five

individuals seeking to live in the rental, and Wenner explained that "five would be okay" but that only three could be listed on the lease. *Transcript* at 82. Wenner cautioned that if HAND came for an inspection, they would need to say that two of the people were just visiting, as he had been fined in the past for allowing five tenants.

[6] In late January 2021, Hensley and Kaiser went to tour the rental with Justin Kidd, who lived there while working on the property. The rental did not look like the pictures in the listing, as the windows were boarded up and work was being done on the rental. Wenner assured them that the conditions would improve before the start of the lease in August. Wenner did not inform Tenants of the restriction on use of the garage, which they planned to use for storage and for playing and practicing music.

[7] Hensley sent a $2,050 deposit to Wenner on January 27, and Tenants later signed the lease, which was to begin on August 15, 2021. Over the next several months, Hensley had some contact with Kidd about improvements being made at the rental, and he drove Kidd to Menards more than once to pick up supplies. Hensley also helped by mowing the lawn two times at Wenner's request to avoid fines by HAND. Hensley also paid Wenner a portion of the first month's rent early to help move improvements along. But Kidd moved out of and stopped working on the rental around mid-July without completing necessary repairs.

[8] On or about July 26, Tenants went to check on the rental with keys that had been given to Hensley. Tenants discovered what they believed to be unlivable conditions inside the rental. There was a musty, moldy smell throughout, and current Airbnb guests were complaining about coughs they were developing. Tenants found two to three inches of standing water in part of the basement, a leak in the wall, and visible mold growing on the walls. There were large holes in the drywall, where a wall was falling apart in the basement. The upstairs sunroom also had mold and deteriorating walls. Additionally, Tenants found the garage littered with trash, including used hypodermic needles.

[9] Tenants immediately contacted Wenner about the condition of the rental and specifically requested that he have professionals come in to assess and treat the mold inside the home. Wenner responded that Tenants could just spray the mold with bleach and that hiring a professional service was not necessary. He otherwise tried to assure them that the rental would be ready by the beginning of the lease on August 15 and warned them that they could not void the lease.

[10] Tenants felt that Wenner had made "a lot of empty promises" over the previous six months, and they did not believe that the rental would be made livable in the short time remaining before their scheduled move-in date. *Transcript* at 90. After some back and forth with Wenner regarding the mold and other issues, Hensley, on behalf of Tenants, sent a message to Wenner stating that the "house is not livable" and "we will not be paying you." *Exhibits* at 44. When Wenner asked for clarification, Hensley responded, "The mold is an especially large problem. The repairs that need to be done are beyond our capacity and

the red flags are continuing to grow." *Id*. Tenants spoke with Student Legal Services and then moved forward with finding alternative housing.

[11] On August 30, 2021, Tenants, by counsel through Student Legal Services, demanded that Wenner return their security deposit and prepaid rent. Another written demand was sent to Wenner on September 15, after the issuance of a HAND inspection report from the prior week, which documented around seventy existing violations. Particularly relevant here, the report established that more than three weeks after Tenants' lease was to begin, there was still a water leak and a damaged wall in the sunroom and a hole in a basement wall, along with many windows that did not function properly and various plumbing and electrical issues. The garage also remained unavailable for use by renters under the temporary rental occupancy permit. Wenner did not receive a (non-temporary) residential rental occupancy permit from HAND until May 17, 2022, after finally establishing compliance.

[12] Tenants began a small claims action against Wenner in December 2022, claiming that he breached the lease by failing to make necessary repairs and to conduct necessary cleaning to provide full use of the premises, including the garage. Tenants also alleged that parts of the rental were "not fit for human habitation." *Appellees' Appendix* at 18.

[13] A bench trial was held on March 30, 2023, at which Tenants were represented by counsel and Wenner proceeded pro se. On April 14, 2023, the trial court

entered judgment for Tenants in the amount of $3,709.99,[1] plus attorney's fees in the amount of $2,000 and court costs.

[14] Wenner now appeals pro se. Additional information will be provided below as needed.

## Discussion & Decision

[15] We find Tenants' assessment of this appeal to be apt:

> This appeal is meritless, frivolous, and not prosecuted in good faith. Mr. Wenner deviates from the Appellate Rules and ignores substantive law so completely that his brief is arduous to respond to in any meaningful way. This appeal is an improper effort to relitigate the underlying cause. Mr. Wenner has failed to identify a colorable theory to support the prosecution of this appeal.

*Appellees' Brief* at 7.

[16] It is well established that a pro se litigant will be held to the same standard as a licensed attorney. *See, e.g., Estate of Carnes*, 866 N.E.2d 260, 265 (Ind. Ct. App. 2007). Ind. Appellate Rule 46(a) clearly sets out the required contents of an appellant's brief and provides in relevant part:

> The appellant's brief shall contain the following sections under separate headings and in the following order:

---

[1] This amount included return of the security deposit and prepaid rent and consequential damages for storage fees and lost income.

(1) *Table of Contents*. The table of contents shall list each section of the brief, including the headings and subheadings of each section and the page on which they begin.

(2) *Table of Authorities*. The table of authorities shall list each case, statute, rule, and other authority cited in the brief, with references to each page on which it is cited….

\*\*\*

(4) *Statement of Issues*. This statement shall concisely and particularly describe each issue presented for review.

(5) *Statement of Case*. This statement shall briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court …. Page references to the Record on Appeal or Appendix are required in accordance with Rule 22(C).

(6) *Statement of Facts*. This statement shall describe the facts relevant to the issues presented for review but need not repeat what is in the statement of the case.

> (a) The facts shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C).

> (b) The facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed.

> \*\*\*

(7) *Summary of Argument*. The summary should contain a succinct, clear, and accurate statement of the arguments made in the body of the brief….

(8) *Argument*. This section shall contain the appellant's contentions why the trial court … committed reversible error.

> (a) The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on ….

> (b) The argument must include for each issue a concise statement of the applicable standard of review ….

> (c) Each argument shall have an argument heading. If substantially the same issue is raised by more than one asserted error, they may be grouped and supported by one argument.

> \*\*\*

> (9) *Conclusion*. The conclusion shall include a precise statement of the relief sought and the signature of the attorney and pro se party.

*Id*. Further, Ind. Appellate Rule 43(E) requires briefs to be double spaced.

[17] Wenner's appellate brief violates each of the above requirements and does not resemble proper briefing in any way. Most notably, he does not: (1) set out the issues for review, (2) provide a statement of facts, (3) specify the applicable standard of review, (4) provide any citations to the record[2] or legal authority, or (5) provide cogent argument. His brief is a series of nonsensical ramblings with the sole purpose of relitigating whether he could have had (or did have) the

---

[2] Wenner did not file an appendix pursuant to Ind. Appellate Rule 50(a).

rental in habitable condition by August 15, 2021, and whether mold – the existence of which he does not dispute – was the real reason Tenants walked away from the lease. His reply brief is more of the same. And he improperly attempts to assert a counterclaim for the first time on appeal.[3]

[18] We prefer to decide cases on the merits, if such can be done, but "we will deem alleged errors waived where an appellant's noncompliance with the rules of appellate procedure is so substantial it impedes our appellate consideration of the errors." *Ramsey v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 789 N.E.2d 486, 487 (Ind. Ct. App. 2003) (internal quotation omitted). The purpose of our appellate rules is to aid and expedite review and to relieve the appellate court of the burden of searching the record and briefing the case. *Id*. "We will not become an advocate for a party, nor will we address arguments which are either inappropriate, too poorly developed or improperly expressed to be understood." *Id*. (quoting *Terpstra v. Farmers and Merchants Bank*, 483 N.E.2d 749, 754 (Ind. Ct. App. 1985), *trans. denied*). Here, Wenner's noncompliance with the appellate rules has substantially impeded our review, and we find the issues waived. *See id.* at 490 ("[B]ecause Ramsey's noncompliance with the appellate

---

[3] Ind. Small Claims Rule 5(A) provides for the time and manner of filing a counterclaim:

> If the defendant has any claim against the plaintiff, the defendant may bring or mail a statement of such claim to the small claims court within such time as will allow the court to mail a copy to the plaintiff and be received by the plaintiff at least seven (7) calendar days prior to the trial. If such counterclaim is not received within this time the plaintiff may request a continuance pursuant to S.C. 9. The counterclaim must conform with the requirements of S.C. 2(B)(4).

The record does not reflect that Wenner raised a counterclaim below.

rules substantially impedes us from reaching the merits of this appeal, we are compelled to find the issues raised are waived.").

[19] In addition to waiver, we find that this is an appropriate case for the assessment of appellate attorney's fees. Ind. Appellate Rule 66(E) provides us with discretionary authority to award damages for frivolous or bad-faith filings. We use "extreme restraint when exercising this power" due to its potential chilling effect on the exercise of the right to appeal. *Carnes*, 866 N.E.2d at 267.

> A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. Just as pro se litigants are required to follow all of the rules of appellate procedure, they are also liable for attorney fees when they disregard the rules in bad faith.

*Id*.

[20] Attorney's fees may be awarded under this rule for substantive or procedural bad faith. As is relevant here, procedural bad faith:

> occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Even if the appellant's conduct falls short of that which is deliberate or by design, procedural bad faith can still be found.

*Id*. (internal quotations omitted).

[21]     Wenner's procedural bad faith is widespread.  As noted above, he wholly disregarded the form and content requirements of our appellate rules.  Moreover, aside from lacking citations to the record or providing a separate statement of facts section, the facts he relies on in his appellate briefs often lack support in the record or are irrelevant, and they are not stated in a light most favorable to the trial court's judgment.  Finally, his briefs required an inordinate amount of time to decipher and wade through.

[22]     In sum, Wenner's procedural bad faith rises to the level of egregiousness for which appellate attorney's fees are warranted.  Accordingly, we remand for a determination of appellate attorney's fees to be awarded to Tenants.

[23]     Judgment affirmed and remanded.


         Weissmann, J. and Kenworthy, J., concur.